IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARTAY SCRUGGS,

    Plaintiff,                      No. CIV S-06-0633 FCD DAD P

    vs.

S. VANCE, et al.,

    Defendants.                  **FINDINGS & RECOMMENDATIONS**

                            /

        Plaintiff is a former state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Before the court is defendants' motion for summary judgment.

**BACKGROUND**

        This action is proceeding on plaintiff's amended verified complaint, filed on August 23, 2007.[1] Therein, he alleges as follows. On September of 2003, plaintiff was

---

[1] Plaintiff's amended complaint was filed before the defendants had responded to the original complaint and thus plaintiff did not require leave of court. See Fed. R. Civ. P. 15(a). On September 7, 2007, the court issued an order deeming a section of the amended complaint to be plaintiff's opposition to defendants' motion to dismiss the action for failure to exhaust administrative remedies. That motion to dismiss was subsequently withdrawn by defendants and they filed their answer on October 26, 2007, responding in error to plaintiff's original complaint rather than the amended complaint. Because the amended complaint did not add claims or defendants, the court will deem defendants' answer to be a proper response to plaintiff's amended complaint.

1

transferred to the California State Prison - Sacramento (CSP-Sac) and housed in the enhanced outpatient program (EOP).[2]  Plaintiff suffers from "serious mental disorders." (Am. Compl. at 3.) Inmates in the EOP are double celled and if an inmate refuses to be double celled, he is placed in an isolation cell within the administrative segregation unit.

On May 19, 2004, plaintiff and inmate Robinson, plaintiff's cellmate, spoke to defendant correctional officer Claborne about plaintiff moving to another cell because plaintiff and Robinson "were not compatible cellmates." (Id. at 5.)  Plaintiff spoke to inmate Carwell, who agreed to be plaintiff's cellmate.  Plaintiff, Carwell and Robinson informed defendant correctional officer Claborne about this agreement.  After defendant Sergeant Nelson approved the move, defendant Claborne told plaintiff to return to his cell and pack his personal property. Plaintiff told defendant Claborne that he was "skeptical" about returning to his cell because Robinson and he had "almost got into a physical confrontation." (Id. at 6.)  Defendant Claborne "tried to assure plaintiff the problem was over." (Id.)  When plaintiff returned to his cell, he was stabbed by inmate Robinson, suffering lacerations to his throat, left arm, back and head. (Id.) While plaintiff was receiving stitches in the emergency room, defendant Nelson stated, "Robinson did what he said he was going to do[.]  I didn't believe him now I got to go and cover my ass with paper work." (Id. at 7.)  Plaintiff also names Captain Vance as a defendant.

Plaintiff claims that defendants, correctional officer Claborne, Sergeant Nelson and Captain Vance, violated his Eighth and Fourteenth Amendment rights by failing to protect him from an inmate who was known to have a mental illness. (Id. at 10-11.)  Plaintiff seeks actual and punitive damages in an amount to be proven at trial. (Id. at 11.)

/////
/////
/////

---

[2] Plaintiff is currently housed at Atascadero State Hospital.

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
>
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

/////

On December 18, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

**OTHER APPLICABLE LEGAL STANDARDS**

I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

/////

/////

II. Eighth Amendment and the Failure to Protect an Inmate

It is well established that a prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the cruel and unusual punishment clause of the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 828-29 (1994); Helling v. McKinney, 509 U.S. 25, 31-32 (1993); Wilson v. Seiter, 501 U.S. 294, 302 (1991); Estelle v. Gamble, 429 U.S. 97, 104 (1976). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. There are objective and subjective requirements which must be met to prevail on such an Eighth Amendment claim. First, for the objective requirement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. Second, the prison official must have a sufficiently culpable state of mind. See id. Here the state of mind is one of deliberate indifference. See id. A prison official who knows of and disregards an excessive risk to an inmate's health or safety demonstrates deliberate indifference. See id. at 837. Thus, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Id. However, an official who knows of a substantial risk to an inmate's health or safety but acts reasonably under the circumstances will not be held liable under the cruel and unusual punishment clause, even if the threatened harm results. See id. at 843.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I. Defendants' Statement of Undisputed Facts and Evidence[3]

Defendants' statement of undisputed facts is supported by declarations from defendants Claborne and Nelson, as well as plaintiff's deposition testimony.

---

[3] On August 11, 2009, defendants filed a Notice of Errata and an Amended Statement of Undisputed Facts in Support of Motion for Summary Judgment. In the original statement of undisputed facts, defendants referred to a declaration by defendant Vance. (See Original State. of Undisputed Facts filed Oct. 17, 2008, ¶ 3 at 2.) In that section of the amended statement defendants omit that reference and instead refers to plaintiff's amended complaint in that regard. (See Am. State. of Undisputed Facts, ¶ 3 at 2.)

6

According to defendants' statement of undisputed facts, on May 19, 2004, plaintiff was housed at Facility A in the Enhanced Outpatient Program and celled with inmate Robinson. Plaintiff told defendant correctional officer Claborne that he wasn't getting along with inmate Robinson because they were incompatible. Defendant Claborne told plaintiff that the only open cell assignment was with inmate Carwell and plaintiff asked if he could be celled with Carwell. Plaintiff walked away to find Carwell. Defendant Claborne called defendant Nelson and told him that plaintiff requested to be celled with Carwell. A few minutes later, plaintiff, Robinson and Carwell approached defendant Claborne and told him that everyone had agreed to have plaintiff housed with Carwell. Defendant Claborne told them that he would have to check with defendant Nelson to obtain approval. A few minutes later, defendant Nelson called defendant Claborne and told him that upon review, plaintiff was approved to be housed with Carwell. Defendant Claborne told plaintiff that the move was approved and that he should return to his cell and pack his belongings. Plaintiff thanked defendant Claborne and asked Claborne to go back to the cell with him to help him pack his belongings because plaintiff "was skeptical about going back into the cell with Robinson because he was crazy." (Def. State. of Undisputed Facts at 3.) Plaintiff told defendant Claborne that earlier that morning he almost got into a physical confrontation with Robinson but plaintiff did not tell defendant Claborne that he would be assaulted if he returned to the cell. Defendant Sergeant Nelson was unaware of these circumstances and did not know that plaintiff was told to return to his cell without an officer escort. Defendant correctional officer Claborne did not believe that plaintiff was at risk of serious harm if he returned to his cell. Defendant Sergeant Nelson does not recall speaking to plaintiff in the infirmary and if he did refer to having to do paperwork in a conversation with plaintiff, he meant that because plaintiff had been assaulted, he would have to prepare an incident report and conduct an investigation. As to defendant Captain Vance, plaintiff is merely speculating that he was on a committee that cleared inmate Robinson to share a cell with another inmate, knowing that Robinson posed a risk of serious harm to plaintiff.

II. Defendants' Arguments

   Defendant correctional officer Claborne argues that given the defense evidence it cannot be said that he failed to protect plaintiff from a known risk of serious harm. He claims that although plaintiff told him that Robinson and plaintiff were incompatible and had earlier almost had a physical confrontation, plaintiff never told him that he was at risk of serious harm if he returned to his cell. In this regard, defendant Claborne states in his declaration that plaintiff never said that he would be assaulted if he returned to his cell. (Def. State. of Undisputed Facts, Ex. B (Claborne Decl.) ¶ 13 at 2.)

   Defendant Sergeant Nelson disputes having made any statement about having prior knowledge of the assault and having to do paperwork to cover himself. However, according to counsel for defendants, this allegation by plaintiff is immaterial because defendant Sergeant Nelson only approved of the bed move to rehouse plaintiff with another inmate and did not have any prior knowledge about what correctional officer Claborne was going to do or that Claborne would order plaintiff to return to the cell shared with Robinson without an officer escort. (Id., Ex. C (Nelson Decl.) ¶¶ 7-8, at 2.)

   As to defendant Captain Vance, defense counsel argues that there is no evidence before the court indicating that Vance failed to protect plaintiff. Defense counsel contends that plaintiff is merely speculating that defendant Vance was a member of the classification committee and allowed Robinson to be housed with plaintiff. Counsel asserts that there is no evidence before the court indicating that Captain Vance knew of and ignored a risk of serious harm to plaintiff.

   In addition, counsel for the defendants argues that all are entitled to qualified immunity because no evidence exists that any of the defendants knew that plaintiff was at risk of serious harm and therefore there is no evidence that plaintiff's constitutional rights were violated.

/////

/////

III. Plaintiff's Opposition

In opposing defendants' motion for summary judgment, plaintiff contends that defendants "have failed to meet their burden of proof[] in demonstrating that there is no dispute as to material facts." (Opp'n at 1.) Plaintiff also complains that defendants have failed to respond to his discovery requests and contends that his statement of material facts and evidence show that defendants did violate his constitutional rights.

As to qualified immunity, plaintiff argues that the evidence establishes that inmate Robinson had an extensive history of assaulting other inmates, that Robinson was a convicted murdered and that the defendants therefore should have understood that in the prison setting plaintiff could not overtly state his concern that Robinson would stab him "without fear of retribution and reprisal" by either Robinson or from other inmates who might label him a "snitch" as a result. (Opp'n at 2.)

As far as inmate Robinson's history of assaulting other inmates, plaintiff represents that Robinson had only recently been released from a "'PHU'" program after attacking his previous cellmate. Plaintiff also argues that the "defendants were seasoned veteran's [sic] of the institution and hence had knowledge of Inmate Robinsons [sic] potential for violence." (Opp'n at 2.) Plaintiff asserts that because of inmate Robinson's history of assaulting other inmates, defendant Captain Vance should have realized that inmate Robinson needed to be on single-cell status in order to protect the other inmates and the other defendants did or should have recognized the risk inmate Robinson posed to other inmates including plaintiff.

Plaintiff also contends that the defense has conspired to deny him relevant evidence by refusing to produce requested documents in discovery, such as inmate Robinson's central file and daily activity report. (Id. at 3.) Once these documents are obtained, plaintiff

/////
/////
/////

asserts that he will be able to show that all of the defendants had knowledge that inmate Robinson posed a danger to other inmates.[4]

IV. Defendants' Reply

Defendants assert that plaintiff has provided only speculation, but no evidence, that defendants knew of and ignored a risk of serious harm to plaintiff by inmate Robinson. Defense counsel disputes plaintiff's contention that defendants failed to adequately respond to his numerous discovery requests, attaching copies of their discovery responses to their reply for the court's review. Defendants repeat their contention that because plaintiff has provided no evidence that they violated his constitutional rights, they are entitled to qualified immunity.

**ANALYSIS**

I. Defendant Claborne

As noted above, defendant correctional officer Claborne argues that he was not deliberately indifferent to plaintiff's safety because he was not aware that plaintiff faced a substantial risk of harm if he returned unescorted to the cell he shared with inmate Robinson. To support this position, the ultimate issue in this failure to protect action, defendant Claborne points solely to evidence that plaintiff's statements about inmate Robinson and their earlier near-physical confrontation were somewhat vague and arguably cryptic. However, plaintiff's failure to protect claim is not based merely on his statements to defendant Claborne. Plaintiff contends that inmate Robinson posed a danger to other inmates that was both known and obvious. At his

/////

---

[4] The court notes that on July 14, 2008, plaintiff filed a motion to compel discovery and, on July 28, 2008, filed a document styled, "Petition For Writ Of Mandate/Prohibition" which appeared to also seek further discovery. Defendants filed an opposition to the motions and provided the court with a copy of their responses to plaintiff's discovery request. On March 11, 2009, the court denied plaintiff's motion to compel and his petition in light of defendants' responses to the discovery requests and because plaintiff did not satisfy his burden of demonstrating that the responses were inadequate or that further responses should be compelled by the court. Therefore, to the extent that plaintiff may be attempting to state his opposition to the defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(f), his opposition on that ground is not well taken.

deposition, plaintiff testified as follows regarding inmate Robinson's mental illness and known assaultive behavior:

> Q [Defendants' Counsel]: And do you know if Claborne knew anything about Robinson?
>
> A [Plaintiff]: He should have known something about Robinson. Everybody knew Robinson was crazy. He was paranoid because people were thinking that he just assaulted another inmate prior to getting out. He just got out of PHU, Psychiatric Housing Unit, for assaulting another inmate because he thought he made his bed move.

(Dep. at 71.)

> Q: But you, at no point in time, said, "Inmate Robinson is threatening to hurt me?"
>
> A: I told him [defendant Claborne] afterwards. After he okayed the bed move and I was by myself, I said, "Thank you for the bed move." And I further emphasized to him how skeptical I was on returning back to my cell because me and Robinson almost got in a physical confrontation.

(Dep. at 50-51.)

> Q: When you say you emphasized how skeptical you were, what did you tell him?
>
> A: I said, "You know Robinson's crazy, man, and I don't want to go back to the cell unsupervised and pack my own property." He reassured me that the problem was over and said, "Scruggs, you got the bed move you wanted. Don't even worry about it. Go back to your cell."
>
> Q: Did you, at any point - - did you tell Officer Claborne that Robinson was threatening to hurt you?
>
> A: Yeah. I told him we almost got in a physical confrontation.
>
> Q: When did you tell him that?
>
> A: I told him that when I was going back in, when I was by myself.
>
> Q: You said you almost got into a physical confrontation?
>
> A: Right.

1     Q: Did you tell him when?

2     A: That morning. I said exactly these words, "Claborne, thank you for the bed move." I said, "But can you come back to the cell with me to pack my property because I'm skeptical about going back in the cell with Robinson because he's crazy. He be thinking people banging on the walls and making the bed move and all of that and we almost got in a physical confrontation this morning and I don't want to go back in the cell to pack my property." That's what I told him.

Q: So you said first - - I'm going to parse out what you said. You said first you told him you thought Robinson was crazy?

A: Yes.

Q: And you said you almost got into a physical confrontation?

A: Right.

Q: And then what happened?

A: He said, "No, Scruggs, don't worry about it. It's over with. Go back and pack your property. You got the bed move you requested, now go back and pack your property. It's over with." So I went back to pack my property.

Q: At that point in time, all you said was you almost got into a physical confrontation with him, right?

A: Yes.

Q: You didn't say he was threatening you?

A: Physical confrontation is a threat.

Q: You didn't say he was threatening you with violence, right?

A: I don't speak the way you speak. I speak the way I speak.

Q: So you say you almost got into a physical confrontation. What does that mean to you?

A: Physical confrontation means that we almost got into a fight.

Q: Okay. And it's your belief that Officer Claborne should have understood what that meant?

A: He knew what it meant.

/////

12

1       Q:  Yes or no?
2       A:  Yes.
3  (Dep. at 52-54.)
4       The court also notes that in his declaration, defendant Claborne does not address whether he was or was not aware of inmate Robinson's mental illness and/or past assaults on his cellmates or other inmates.  In moving for summary judgment, defendant had the initial burden of demonstrating the absence of a genuine issue of material fact.  Defendant Claborne has failed to meet that burden.

On summary judgment, the court is required to believe plaintiff's evidence and to draw all reasonable inferences from the evidence before the court in plaintiff's favor.  Based upon the evidence before the court and set out above, the undersigned finds that there is a disputed issue of material fact as to whether inmate Robinson's dangerousness was known by or obvious to the defendants.  Farmer, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk [is] a question of fact subject to demonstration in the usual ways, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."); see also Foster v. Runnels, 554 F.3d 807, 814 (9th Cir. 2009) ("[I]f an inmate presents evidence of very obvious and blatant circumstances indicating that the prison officials knew the risk existed, then it is proper to infer that the official must have known [of the risk]."); Simmons v. Cook, 154 F.3d 805, 807 (9th Cir. 1998) (same).  Accordingly, defendants' motion for summary judgment should be denied as to defendant Claborne.

II.  Defendant Nelson

In his verified amended complaint, plaintiff asserts that defendant Sergeant Nelson made an inculpatory statement indicating that he had knowledge that inmate Robinson was threatening to stab his next cellmate.  (Am. Compl. at 7.)  Moreover, at his deposition plaintiff testified as follows with respect to defendant's specific knowledge of the risk posed by inmate Robinson:

1  A: [ ] And after I was stitched up, they placed me in a cage across from Robinson, and me and Robinson was talking. Robinson was talking to me and he was telling me some things.

2

3  Q: So you were put in a cage next to Robinson?

4  A: Not next to him, but adjacent, like diagonally across form him. I was in, like, cage 7 and he was, like, in cage 8, something like that. Six or something.

5

6  Q: What happened then?

7  A. Robinson told me, he said, "Hey, man, I didn't want to have to do you like that, but I had to do what I had to do." He said, "I told them that I didn't want no cellmate, but they put someone in my cell." He said Vance and Nelson already knew that the next person that come in the cell, he was going to stab them. And he told them that.

8

9

10

11  (Dep. 64-65.)

12  As noted above, in moving for summary judgment defendant Nelson argues that

13  whether he had prior knowledge about the threat posed by inmate Robinson is immaterial

14  because he approved plaintiff's cell move, not knowing that plaintiff would be returned to the

15  cell he shared with Robinson without an escort. The court disagrees. "Where defendant's

16  actions are a 'moving force' behind a series of events that ultimately lead to a foreseeable harm,

17  defendant is not relieved of liability on account of the intervening acts." Conn v. City of Reno,

18  572 F.3d 1047, 1061 (9th Cir. 2009) (citing White v. Roper, 901 F.2d 1501, 1506 (9th Cir.

19  1990)).

20  Here, defendant Nelson's argument that there was an intervening cause

21  (presumably defendant Claborne's failure to escort plaintiff to the cell) for plaintiff's injury is an

22  insufficient basis upon which to grant summary judgment in his favor. Defendant Sergeant

23  Nelson has chosen not to address the issue of his knowledge of the threat or potential danger

24  posed to other inmates, including plaintiff, by inmate Robinson.. Therefore, defendant Nelson

25  has not carried his initial burden of establishing the absence of a disputed issue of material fact.

26  /////

1 Accordingly, defendants' motion for summary judgment should also be denied as to defendant
2 Nelson.
3 III.  Defendant Vance
4       Defendant Captain Vance has not submitted his own declaration or any other
5 evidence in support of the motion for summary judgment in his favor.  Rather, in this respect
6 defendant's motion is based solely on plaintiff's deposition where he testified as to his belief that
7 defendant Vance was on the committee that approved inmate Robinson for a double cell.
8 Plaintiff's testimony concerning defendant Vance was as follows:

    Q:  And Captain Vance, what are your claims against him?

    A:  He was on the committee and he was involved in determining factor of whether Robinson gets single-cell status or not.  And Robinson told me, himself, that he told Vance that if he puts someone in his cell, he's going to stab them because he wants single-cell status.

    Q:  But you don't have any knowledge of that, right?

    A:  He's going to be my witness.

    Q:  But all you have is what Robinson told you?

    A:  Yes.

    Q:  You did not witness - -

    A:  Well, in my production documents, I had requested who was on the committee and then you all didn't give me nobody who was on the committee.  I'm going to appeal that because I was supposed to know who was on the committee.

    Q:  On the committee when?

    A:  When Robinson was approved for double cell.

    Q:  Now, but as of now, you have nothing tying Vance to this, apart from you think he was on the committee that approved Robinson for double cell, right?

    A:  Right.

/////

15

1   Q: But you don't know?

2   A: I just know what Robinson told me.

3 (Dep. 72-73.)

4   As discussed above, there is a genuine issue of disputed material fact as to whether all of the defendants, including defendant Captain Vance, had knowledge of inmate Robinson's history of assaulting his cellmates and/or other inmates and of his threat that he would attack his next cellmate. "Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970) (quoting Advisory Committee Note on 1963 Amendment to subdivision (e) of Rule 56). See also Island Equipment Land Co. v. Guam Economic Development Authority, 474 F.2d 753, 756 (9th Cir. 1973). Here, defendant Vance has failed to establish the absence of a genuine issue concerning his knowledge of the risk posed by inmate Robinson. Therefore, defendant Vance has failed to carry his initial burden of proof and the defendants' motion for summary judgment should be denied with respect to defendant Vance as well.

IV. Qualified Immunity

Finally, defendants assert that they are all entitled to qualified immunity because the evidence before the court establishes that they did not violated plaintiff's constitutional rights.

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Because qualified immunity is an affirmative defense, the burden of proving the defense lies with the official asserting it. Harlow, 457 U.S. at 812; Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992); Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir. 1989). Where the official moves for summary judgment on his qualified

immunity defense, he bears the initial burden of establishing the absence of a genuine issue of fact on matters material to his affirmative defense.  Houghton, 965 F.2d at 1537.

For the reasons set forth above, the undersigned has concluded that there are disputed issues of material fact with respect to plaintiff's claim that the defendants violated his Eighth Amendment rights by failing to take adequate steps to protect him from a known or obvious risk of serious harm.  Due to the existence of these disputed issues of material fact, defendants have failed to meet their initial burden in moving for summary judgment on the affirmative defense of qualified immunity.[5]  Accordingly, defendants' motion for summary judgment on qualified immunity grounds should be denied.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (Doc. No. 52) filed October 17, 2008, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within five days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 27, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
scrug633.57

---

[5] Of course, at the time of the incident in question in 2004, it was clearly established that prison officials had a duty to protect prisoners from a known or obvious substantial risk of serious harm.  Farmer, 511 U.S. at 833.