JOANNA H. KIM (SBN 183799)
BRIAN M. ROTHSCHILD (SBN 252573)
jkim@akingump.com
brothschild@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067
Telephone: 310-229-1000
Facsimile: 310-229-1001

Attorneys for Plaintiff
ARTAY SCRUGGS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ARTAY SCRUGGS, an individual,

Plaintiff,

v.

S.VANCE, et al.,

Defendants.

Case No. 2:06-CV-0633-FCD-KJN (PC)

**JOINT STATEMENT PURSUANT TO LOCAL RULE 251(c) RE MOTION TO COMPEL AND FOR SANCTIONS AGAINST DEFENDANTS AND AGAINST CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**

Date: December 8, 2011
Time: 10:00 a.m.
Ctrm: 25
Judge: Hon. Kendall J. Newman

**PLAINTIFF'S PORTION**

## I. INTRODUCTION

Four months ago, the Court re-opened discovery in this matter to allow Plaintiff Artay Scruggs ("Plaintiff") to serve certain additional discovery, including a subpoena on the California Department of Corrections and Rehabilitations ("CDCR") for documents relevant to Plaintiff's case. Although Plaintiff immediately served that subpoena, to which CDCR failed to object, CDCR has not only failed to comply with the subpoena but now affirmatively refuses to do so without a further Court Order, thus forcing Plaintiff to file the instant Motion.

CDCR's recent refusal comes only after CDCR, together with Defendants (who have inserted themselves into the meet and confer process over CDCR's compliance with the subpoena), embarked on a course of conduct designed simply to stonewall. Over the past two and a half months, with the assistance of Defendants' counsel, CDCR has alternately made, then retracted, the following positions: (1) that it was not required to search its sub-institutions for requested documents; (2) that Plaintiff should seek the documents from other institutions outside CDCR, which Plaintiff capitulated, only to find that the referenced institution did not have the documents; (3) that Plaintiff needed to meet and confer with ***Defendants'*** counsel regarding the subpoena; (4) that CDCR had performed a methodical search for relevant documents; and (5) that CDCR had in fact produced all responsive documents.

The primary goal of issuing the subpoena to the CDCR – as expressly noted in Plaintiff's prior application to this Court for the additional discovery – was to obtain documents prior to Defendants' depositions. CDCR's delayed production forced Plaintiff to proceed with the depositions (already delayed by Defendants' claimed availability) without a complete production. But Plaintiff has since learned that, at the same time that CDCR was telling Plaintiff it could not produce responsive documents before Defendants' depositions were taken, CDCR had in fact sent those same documents to ***Defendants' counsel*** to assist ***them*** in preparing for those depositions.

At the end of the day, CDCR has produced only a handful of responsive documents despite Defendants' testimony that almost every action or decision is documented and such responsive documentation is maintained in CDCR's "central file" for each inmate. CDCR has otherwise failed to conduct a thorough search of its documents, continued to withhold documents and has refused to produce any that CDCR contends is "confidential" despite the Court's Order that expressly subjects the production to a protective order, and despite CDCR's waiver of its objections.

Accordingly, Plaintiff seeks an order directing CDCR to immediately comply with the Subpoena and monetary and evidentiary sanctions against CDCR and Defendants as follows: (1) reimbursement from CDCR for the attorney's fees incurred in trying to compel compliance from CDCR; and (2) an adverse evidentiary inference against Defendants with respect to issues on which the CDCR and Defendants have failed to maintain and/or produce responsive documents.

## II. BACKGROUND

### A. The Court Grants Plaintiff's Application for Limited Discovery, and Plaintiff Immediately Thereafter Serves a Subpoena on CDCR

Plaintiff seeks evidence in support of his action for civil rights violations arising from an attack by his cellmate, Lorenzo Robinson ("Robinson"), during Plaintiff's incarceration at California State Prison-Sacramento ("CSP-SAC"), which is run by CDCR. For example, Plaintiff seeks documents from his prison files, which would contain a discussion of Defendants' determination of the housing status, disruptive group or gang affiliation/disassociation, debriefings re same, and choice of cellmates for Plaintiff and Robinson. In response to discovery, Defendants refused to produce these files, claiming that they do not have "custody and control" of these files," "cannot produce them," and instead that Plaintiff should direct such discovery to the CDCR. (Declaration of Brian Rothschild, dated November 14, 2011 ("Rothschild Decl.") at ¶ 2, Exh. A at 2.) In turn, CDCR refused to produce any documents without a formal subpoena. (*Id.* at ¶¶ 3-4.)

Accordingly, Plaintiff filed an Application to allow certain additional discovery. (Application, dated August 12, 2011 [Docket No. 136].) On August 23, 2011, the Court issued an Order granted the Application (the "Order"), allowing for certain discovery on CDCR,[1] with specific findings as to the appropriate scope of the subpoena. (Order dated August 23, 2011 [Docket No. 140] at 3:3-4:13.) Moreover, in a subsequent order entered at the behest of the Defendants, the Court specifically determined the conditions under which documents implicating rights to privacy would be produced, eliminating the need for any additional protective order. (*Id*. at 3:15-17; *see also* Docket No. 142.)

In accordance with the findings set forth in the Order, on August 26, 2011, Plaintiff served a subpoena on the CDCR (the "Subpoena"). (Rothschild Decl. ¶ 5, Exh. B.) The Subpoena called for the production of documents relating to the determination of the housing status, choice of cellmates, and prior incidence of violence for the Plaintiff and his assailant, Robinson. (Rothschild Decl., Exh. B.)

CDCR's deadline to comply with that Subpoena was September 16, 2011. (Exh. B to Rothschild Decl.) Plaintiff therefore anticipated receipt of the documents to accord sufficient time for review prior to the depositions of Defendants, which were scheduled for mid-October and had to be completed by the end of October pursuant to the Court's Order. (Order dated August 5, 2011 [Docket No. 134], at 4.)

In early September of 2011, CDCR requested a copy of the Order, stating that if CDCR felt it appropriate to do so under the Order, CDCR would comply with the Subpoena. (Rothschild Decl. ¶ 7, Exh. D.) Plaintiff immediately provided a copy of that Order. (*Id.* ¶ 7.)

[1] The Order also allowed for certain discovery of Defendants. (Order, at 2:16-17.) Since then, Defendants have implied that there may be responsive documents that are no longer in their possession. (Rothschild Decl., Exh. C [stating that they would produce only "the documents identified in Defendants' previously filed pretrial statement - *and that we are currently in possession* of are what will be produced within the court-ordered deadline."] [emphasis in original].)

**B. <u>CDCR Does Not Object to the Subpoena Yet Fails to Produce – or even Conduct a Diligent Search for – Responsive Documents</u>**

1. <u>CDCR Defends its Incomplete Production by Claiming that it Does Not Possess Plaintiff's Records, a Statement that is Proven False</u>

CDCR did not serve any objections to the Subpoena by September 16, 2011. (Rothschild Decl. ¶ 9.) Instead, CDCR produced 110 pages, of which only 11 pages appeared to relate to Plaintiff. (*Id.* ¶ 10.) Moreover, a third of the production was illegible or of such poor copy quality as to be of no use at trial. (*Id.*)

Further, instead of complying with its obligation to produce all responsive documents, CDCR offered a series of shifting explanations as to why it would not or could not do so. As each explanation was proven false, CDCR changed its story.

Initially, CDCR contended that Plaintiff must serve a subpoena on each CDCR "sub-institution" that housed the records, as opposed to the CDCR's general litigation office. (Rothschild Decl. ¶ 8.) CDCR stated this even though (1) CDCR controls the sub-institutions and (2) CDCR had waived all objections by failing to serve such objections within the requisite 14 days of the August 26, 2011 service of the Subpoena and indeed by September 16, 2011 production compliance date.

Next, CDCR claimed that it was unable to produce any documents from the Plaintiff's central file because the file was no longer at CDCR given that Plaintiff was no longer an inmate. (*Id.*) Instead, CDCR contended that Plaintiff's records were housed at Atascadero State Hospital under the control of an entity other than CDCR. (*Id.*) Plaintiff was thus forced to spend some two weeks conferring with officials from Atascadero State Hospital; those officials ultimately confirmed on September 29, 2011 that Plaintiff's records were never at Atascadero State Hospital. (Rothschild Decl. ¶ 11.)

In response to further requests from Plaintiff to confirm whether CDCR had in fact produced all responsive documents (*id.* at Exh. E), CDCR stated that it had "provided documents responsive to the subpoena," and purporting to shift its compliance obligation to Defendants, stating "[s]hould [Plaintiff] have any further

questions pertaining to the Scruggs case, ***please direct them to Deputy Attorney General, Michelle Angus [Defendants' counsel]***." (*Id.*, Exh. F (emphasis added).)

2. CDCR, together with Defendants, Continues to Offer Ever-Changing Excuses for CDCR's Failure to Comply

On October 4, 2011, Plaintiff provided in writing identification of various deficiencies in the production and explanation of facts refuting CDCR's claims that it did not have control over Plaintiff's records. (*Id.*, Exh. G.) On October 6, CDCR switched counsel and, for the first time, claimed the Subpoena was overbroad and that it would not produce certain documents without a protective order. (*Id.* at ¶ 13, Exh. H.) In response, Plaintiff noted that the Subpoena contained only those requests specifically allowed by the Court. (*Id.* at Exh. I.) Further, on top of the Court's Order which already addressed any confidentiality issue and on the condition of full compliance prior to Defendants' depositions (scheduled for October 12-13), Plaintiff also agreed to enter into an additional protective order to encourage CDCR's compliance. (*Id.* at ¶, Exh. I.)

Yet, the very next day, CDCR's new counsel contended that all responsive documents had been produced and denied knowledge of any deficiencies in the production. (*Id.* ¶ 17.) This was plainly false. Plaintiff pointed out that CDCR failed to remedy the issues raised in Plaintiff's October 4, 2011 letter and that Plaintiff had obtained from other sources responsive documents that should have been in the CDCR's possession, reflecting CDCR's failure to comply with the Subpoena. (*Id.*, Exhs. G and J.) Plaintiff therefore requested that CDCR conduct a thorough – albeit belated – search in response to the Subpoena. (*Id.*)

3. At the same time CDCR Claims it cannot Produce Documents to Plaintiff , CDCR Provides those Same Documents to Defendants to Assist in Preparation for Depositions

On October 7, 2011, CDCR's counsel acknowledged that it in fact controlled Plaintiff's prison files, but that those files were physically in an inaccessible location at "Case Records headquarters." (Rothschild Decl. ¶ 19, Exh. K.) As a purported result,

CDCR was unable to complete production prior to Defendants' depositions, which took place on October 12-13, and produced only a set of low-resolution photographs, certain redacted reports showing Plaintiff's and Robinson's bed numbers, and clean copies of two (out of thirty-one) pages of poorly copied documents. (*Id.* at ¶¶ 22-23.)

That same day, Defendants threatened in writing to refuse to appear for their depositions if Plaintiff intended to recall them for questioning about documents CDCR might subsequently produce. (*Id.* at ¶ 19, Exh. M.) The depositions ultimately went forward as scheduled, but Defendants refused to be re-called for further depositions, claiming that (1) CDCR had produced all relevant documents and (2) Defendants were not responsible for CDCR's actions. (*Id.* at ¶ 20, Exh. N.)

It was only weeks later that Plaintiff learned that, in fact, the reason the documents in question were not purportedly accessible to CDCR to produce to Plaibtiff was because CDCR had sent those documents to ***Defendants' counsel, who had been using them to prepare for Defendants' depositions***. In late October, well after the depositions, CDCR's counsel informed Plaintiff that the file was "being transferred back to the institutions." (*Id.* at ¶ 28, Exh. S.) In early November, CDCR informed Plaintiff that the file had been sent to Defendants to assist them in preparing for their depositions. (*Id.* ¶ 32.) In fact, at their depositions, Defendants admitted that they had reviewed a substantial number of documents (well in excess of what was produced to the Plaintiff) in preparation for their depositions. (*See* Rothschild Decl., Exh. P (Deposition of O. Claborne dated October 13, 2011 ("Claborne Depo.") at 11:9-14; Deposition of J.D. Nelson dated October 13, 2011 ("Nelson Depo.") at 9:9-14; Deposition of S. Vance dated October 12, 20111 ("Vance Depo.") at 9:8-10:3.).)

On October 12-13, 2011, without the benefit of – or even the knowledge of the existence of – these documents, Plaintiff conducted the depositions of the Defendants. (*Id*. ¶ 24.) During the depositions, it became evident that there were additional categories of documents that should have been produced that were, in fact, in the CDCR's files. For example, Defendants Claborne and Nelson both testified that each

and every time an inmate is placed with a new cellmate, a form "CDC-154" is created. (Rothschild Decl., Exh. P (Claborne Depo.) at 22:1-23:12; Nelson Depo. 20: 20-22.) Defendant Claborne also testified to the existence of a form that inmates signed indicating that they consented to living with another cellmate. (Rothschild Decl., Exh. P (Claborne Depo.) at 25:25-26:28:8.) Defendant Vance testified that the committee charged with determining housing status of an inmate would review documentation related to gang involvement or gang disassociation when making housing decisions. (Rothschild Decl., Exh. P (Vance Depo.) at 61:8-63:6; 67:3-19.) Defendant Vance further testified that only under rare circumstances – circumstances not present here – are documents in an inmate's central file ever destroyed. (*Id.* at 154.)

Put simply, CDCR has not (nor have Defendants) produced any documents from these categories even though (i) these documents are documents used in the determination of housing status and cellmate choice and (ii) both Defendants and CDCR clearly have control and access to these documents.

4. After More Than Eight Weeks of Stalling, CDCR Now Refuses to Comply with the Subpoena Absent a Further Court Order

By October 25, 2011, and after forcing Plaintiff to expend substantial time to address CDCR's purported concerns over the language of a standard protective order based on a form sanctioned by the Southern District of California only to ultimately refuse to sign it, CDCR further expended Plaintiff's time in demanding detailed, consolidated lists of previously described outstanding deficiencies in the production before CDCR would consider complying. (Rothschild Decl. ¶ 26.) Plaintiff capitulated by, among other things, noting the numerous categories of documents responsive to Plaintiff's subpoena and known to have been in CDCR's possession but that still have not been produced, including the following:

- CDC-154 forms used when prisoners are transferred, given a new cell mate, or bed/bunk change;
- The original digital photograph files previously requested;

- Other reports that can be generated or displayed on any electronic system that shows housing, cellmate, safety concerns, or other information for Robinson or Plaintiff; and
- Rosters maintained in the EOP cell block where Plaintiff and Robinson were housed showing incidents, bed moves, staff concerns, and other information related to housing and celling of Plaintiff and Robinson during the relevant time period;

(*Id*. at ¶ 26, Exh. Q.)

In response, CDCR again raised the same waived scope and confidentiality objections to the Subpoena that it had previously raised, acknowledged it had not conducted the necessary searches, and sought more time. (*Id*. at ¶ 27, Exh. R.)

Although CDCR provided a further limited production, it still refused to produce any "confidential" documents despite Plaintiff signing an "attorneys' eyes only" confidentially stipulation and instead requested a further unspecified delay. (*Id.* ¶¶ 29-32, Exh. T.) Ultimately, on November 3, 2011, CDCR confirmed that it had not conducted a search of its files to see whether there were any documents responsive to the Subpoena, and indeed that CDCR could not determined what had been previously produced and what had been withheld. (*Id.* ¶ 32.) Moreover, CDCR asserted that it would not produce any additional documents without a further order from the Court. (*Id.*) Consequently, Plaintiff was forced to file this Motion.[2]

## III. <u>ARGUMENT</u>

### A. CDCR has Failed to Comply with Both the Letter and Spirit of its Discovery Obligations

#### 1. <u>CDCR Waived any Objection to the Scope of the Subpoena</u>

To begin with, CDCR, having failed to timely file any objection to the Subpoena,

[2] In addition to the above discussions with Defendants and CDCR, concurrently with the instant motion, Plaintiff requested a further opportunity to meet and confer with both CDCR and Defendants and continues to be willing to do so.

has waived its right to object to the service or contents of the Subpoena. Plaintiff served its subpoena upon the CDCR on August 26, 2011. CDCR's objections, if any, was due on September 9, 2011. Fed. R. Civ. P. 45(c)(2)(B). CDCR did not serve any objections by such deadline, and did not move to quash the subpoena or for a protective order as required by Fed. R. Civ. P. 45(c)(2)(B), which requires objections to be served by earlier of deadline specified in subpoena or 14 days after service of subpoena.

Failure to *timely* serve an objection or file a motion to quash a subpoena constitutes waiver of the right to object to the subpoena. *McCoy v. Southwest Airlines Co., Inc.*, 211 F.R.D. 381, 383-85 (C.D. Cal. 2002) (where nonparty produced documents without objection or moving to quash the subpoena or for a protective order, defendants cannot subsequently object to that subpoena and all objections of the nonparty, including those related to privilege, are waived); *In re Corso*, 328 B.R. 375 (E.D.N.Y. 2005); *United States v. Int'l Bus. Machs. Corp.*, 70 F.R.D. 700, 701-02 (S.D.N.Y. 1976) ("Absent circumstances which would justify delay, motions under both Rule 26(c) and Rule 45(b) must be served before the time set for compliance in the subpoena."). If the respondent fails to timely object, the court may impose the sanction under Rule 45(e) without an intervening court order to obey. *S.E.C. v. Hyatt*, 621 F.3d 687, 690 (7th Cir. 2010).

Further, the Subpoena at issue requested precisely those documents that the Court specifically instructed Plaintiff to request. Thus, even if CDCR had timely objected to the Subpoena – which it did not – such objection would have no merit whatsoever.

2. <u>CDCR Intentionally Violated the Subpoena.</u>

*a) CDCR Admittedly Failed to Search for Responsive Documents and Is Intentionally Withholding Responsive Documents*

Despite waiving any objection it might have had to the Subpoena, CDCR failed to produce and has, despite repeated promises to do so, failed to undertake a complete search of its files for documents responsive to the Subpoena. ***CDCR acknowledges that, as of today, three months after the service of the Subpoena, that CDCR has still not***

***performed a complete search to determine what responsive documents it possesses.*** (Rothschild Decl. ¶ 32.) CDCR has further acknowledged that it is ***withholding*** responsive documents that it has unilaterally designated as "confidential." (*Id.*) CDCR does so despite the fact that the Court specifically provided a mechanism for the handling of confidential or sensitive documents. (Docket No. 142.) At this point, with only two months before trial, there is no excuse for CDCR's failure to immediately conduct a thorough search and to produce *all* responsive documents.

Moreover, CDCR admits to intentionally withholding materials that are relevant to this litigation. CDCR asserts that it will not produce without another court order any materials related to gang or group affiliation, disassociation, debriefing, or activities as those are "confidential," regardless of their relevance to the Plaintiff's case. (Rothschild Decl. ¶¶ 15, 19, 27, 31, 32.)

Further, these responsive documents are highly relevant. Membership in disruptive groups or gangs is a consideration for housing status and cellmate compatibility under the CDCR's own policies and the Defendants' practices. (Rothschild Decl., Exh. P (Nelson Depo.) at 42:18-44:8.) On a number of occasions, Plaintiff alleges that he expressed his fear to the committee (in which Defendant Vance participated) that determined housing status, that that he would face violent retaliation and, in fact, stated that he could not be housed with members of the Crips gang. (*Id.* 87:17-88-12.) Plaintiff was then subsequently housed together with Robinson, a member of a Crips gang and the same individual who stabbed Plaintiff. (*Id.* at 76:16-78:6.) Accordingly, materials relating to Plaintiff's disassociation from the Crips gang while in prison, his discussion of the same with the prison housing committee, and Inmate Robinson's involvement with the Crips gang are, indeed, highly relevant to both Plaintiff's and Robinson's respective housing status, and therefore this litigation. Indeed, Defendant Vance testified that the committee charged with determining housing status of an inmate would review documentation related to gang involvement or gang

disassociation when making housing decisions. (Rothschild Decl., Exh. P (Vance Depo.) at 61:8-63:6; 67:3-19.)

CDCR has not proffered any authority or basis for withholding these responsive documents. Among others, these documents are relevant to Request No. 1 (seeking documents relating to "Robinson's involvement in incidents of violence, confrontations (including violent and non-violent confrontations), altercations, or arguments); No. 2 (seeking documents "relating to violence, propensity for violence, or threats of violence by Robinson"); No. 5 (seeking documents "relating to determination of cell or housing status of Robinson"); and No. 6 (seeking documents "relating to determination of cell or housing status of Scruggs").

Instead of conducting a complete search for responsive documents, during the past few months CDCR has instead offered a series of shifting excuses for its continuing refusal to produce documents despite the upcoming trial. (*See supra* at II.B pp. 4-6.) Plaintiff has diligently followed every new direction that CDCR has pointed away from it as its story continues to change, only to find just another excuse of CDCR to avoid compliance with the Subpoena, CDCR keeps changed its story, causing the Plaintiff to expend further time and energy. In this way CDCR has stonewalled Plaintiff's efforts to obtain responsive and relevant documents, forcing Plaintiff to expend many unnecessary hours trying to obtain full compliance from the CDCR, resulting in the instant Motion.

**B. The Court Should Sanction CDCR for its Refusal to Comply with the Subpoena and this Court's Order.**

When a non-party fails to adequately respond to a subpoena, "[t]he issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Fed. R. Civ. Proc. 45; *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011) ("district courts enjoy 'very broad discretion to use sanctions where necessary to insure . . . that lawyers and parties . . . fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial.'") (citing *In re Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984)). The only limitations on the court's

discretion to impose sanctions are that they must be just; and they must relate to the particular claim to which the discovery order was addressed. *Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 707, 102 S.Ct. 2099, 2106 (1982).

In order to obtain even CDCR's partial compliance to date, Plaintiff's counsel has had to expend substantial time and costs – all of which was completely unnecessary and should not have been incurred, had CDCR simply complied with its obligations at the outset. Plaintiff respectfully requests that the Court impose monetary sanctions in the amount of $4,500 to CDCR for this unnecessary waste of Plaintiff's and the Court's time. (Rothschild Decl. ¶ 33.)

**C. The Court Can and Should Sanction Defendants for Acting, Both Singly and in Coordination with CDCR, to Deny the Plaintiff His Right to Discovery of Relevant Evidence to Prepare for Trial**

Finally, given the Defendants' direct role over the past months in preventing Plaintiff from obtaining discovery from CDCR and their own evident failure to maintain or produce documents relevant to this litigation, the Court can and should sanction Defendants directly. Allied parties cannot play a shell game designed to frustrate a party's right to obtain needed discovery. *See Lee*, 638 F.3d 1318 at 1322 ("Discovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is squandered."); *Hand Picked Selections, Inc. v. Handpicked Wines Intern. Pty, Ltd.*, 2006 WL 1720442, at *5 (E.D.N.Y. 2006) (holding that the plaintiff had remedies, on facts "suggest[ing] that the defendants have conspired to withhold information," including a severe sanction against one party for colluding with an allied party to frustrate the plaintiff's legitimate right to discovery.)

To begin with, Defendants have control over CDCR's files and the ability to access them whenever they want, as they did to prepare for their depositions. (Rothschild Decl. ¶ 32.) Defendants are each current or former employees of the CDCR, and Defendant's counsel has had access to CDCR's electronic and paper records since

the litigation began. (*Id.*, Exh. P (Nelson Depo.) at 46:11-14; 92:18-24.)[3] Yet Defendants told Plaintiff that they would not produce documents from the inmates' files, and that Plaintiff would instead have to seek them from CDCR. (*Id.*, Exh. T.)

Moreover, Defendants then inserted themselves directly into Plaintiff's communications with CDCR concerning the Subpoena and its documents. In response to Plaintiff's inquiries concerning the Subpoena, CDCR referred Plaintiff to Defendants' counsel. (*Id.* at ¶ 13, Exh. F.) There is little doubt that Defendants coordinated with CDCR concerning its response to the Subpoena. And most egregiously, at the same time that CDCR was withholding key documents from Plaintiff – including those documents Plaintiff would have used to question Defendants during their depositions – CDCR provided those same documents to Defendants to assist them in preparation for those same depositions. (*Id.* at ¶ 32.) Further, at the same time, while feigning ignorance of CDCR's failure to comply with the Subpoena, Defendants tried to exploit such failure to prevent Plaintiff from completing their depositions. (*Id.* ¶¶ 20-21.)

As a result, Plaintiff is now left in a situation where, after battling to get to trial for some five years, he is forced to go to trial on a less than complete documentary record. This case revolves around the reason for two key decisions: (1) the decision to house Scruggs with Robinson; and (2) the decision to send Scruggs back to his shared cell with Robinson without any accompanying officer escort, which resulted in Robinson's stabbing attack on Scruggs. It is evident from the Defendants' testimony that just about every decision and every action was heavily documented. (*Id.*, Exh. P (Claborne Depo. at 27:1-28:5; Nelson Depo. at 112:11-113:3).) Yet almost no

---

[3] There is a significant question about the steps Defendants took to preserve documents in this litigation. At least one Defendant stated that *no one* ever told him in this litigation to collect responsive documents or otherwise preserve documents. (Rothschild Decl., Exh. P (Nelson Depo.) at 120: 6-20.) That documents have not been maintained during this litigation is further confirmed by Defendants' recent statement that "the documents identified in Defendants' previously filed pretrial statement - <u>and</u> *that we are currently in possession of* are what will be produced within the court-ordered deadline." (*Id.*, Exh. S) (emphasis in original.)

documentation has been produced on the rationale for Defendants' actions. And now it appears Plaintiff will never receive those documents.

For these reasons, the Court should impose sanctions severe enough to protect the integrity of the judicial process and dissuade CDCR and Defendants from engaging in any further misbehavior. Defendants and CDCR, through their coordinated effort to deny Plaintiff his day in court, have denied Plaintiff access to an unknown number of documents that have been destroyed, rendered illegible by poor copies, or deliberately withheld. Therefore, Plaintiff respectfully requests that the Court impose the evidentiary sanctions against Defendants in the form of an adverse inference that the contents of documents CDCR has failed to produce would have favored Plaintiff. (*See* Proposed Order, lodged concurrently, herewith.)

## IV. <u>CONCLUSION</u>

Accordingly, Plaintiff respectfully request this Court to (A) to compel CDCR to immediate comply with Subpoena), (B) for monetary sanctions of $4,500 against CDCR, and (C) for evidentiary sanctions against Defendants in the form of an adverse inference that the contents of documents CDCR has failed to produce would have favored Plaintiff.

## V. <u>ADDENDUM PURSUANT TO COURT ORDER</u>

On November 22, 2011, the Court entered an Order and Revised Scheduling Order, which directed that "[c]ounsel for plaintiff shall take into account the discovery responses provided after the initial proposed stipulation was sent on November 15, 2011, and shall revise the Local Rule 251 stipulation accordingly." (Order and Revised Scheduling Order [Docket No. 148] at 5.) Accordingly, Plaintiff notes the following:

In CDCR's Ex Parte Application ("Application") [Docket No. 146] to continue the hearing on Plaintiff's Motion to Compel, CDCR claimed that it, three months after the Subpoena was served, would be sending documents to remedy the deficiencies in its previous piecemeal productions. (Application, at 3.) While CDCR has produced some documents, the fundamental defects with CDCR's production have not been resolved.

CDCR's additional production failed to provide legible copies or the originals of digital photographs of the incident at issue. Moreover, despite CDCR's continued insistence that ***all*** documents it has previously produced are "confidential," CDCR continues to withhold an unknown number of responsive documents that it unilaterally deems to be somehow "*more* confidential" and asserts that it will not produce them without a further order of this Court.

Indeed, CDCR's limited additional production – which includes responsive documents containing signatures from one or more of the Defendants – demonstrates that Plaintiff has been prejudiced by CDCR's unjustified delay in its production. The net result was to prevent Plaintiff from being able to question Defendants about these documents during their depositions, which had to and did occur before the discovery cutoff. Accordingly, Plaintiff reserves the right to reconvene Defendants' depositions.

Therefore, the Plaintiff respectfully requests that the Court grant the relief requested herein and by the Motion to Compel and for Sanctions.

KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
DAVID A. CARRASCO, State Bar No. 160460
Supervising Deputy Attorney General
GRANT LIEN, State Bar No. 187250
Deputy Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 327-6749
Fax: (916) 324-5205
E-mail: Grant.Lien@doj.ca.gov

*Attorneys for Defendants Vance, Nelson, and Claborne*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **ARTAY SCRUGGS,**<br><br>Plaintiff,<br><br>**v.**<br><br>**S. VANCE, et al.,**<br><br>Defendants. | 2:06-cv-0633-KJM-KJN (PC)<br><br>**DEFENDANTS' PORTION OF JOINT STATEMENT RE: MOTION TO COMPEL AND SANCTIONS**<br><br>Date: December 1, 2011<br>Time: 10:00 a.m.<br>Courtroom: 25<br>Judge: Hon. Kendall J. Newman<br>Trial Date: September 26, 2011<br>Action Filed: March 27, 2006 |

**DEFENDANTS' PORTION OF JOINT STATEMENT**

## I. INTRODUCTION

Plaintiff Scruggs has filed a motion to compel and for sanctions against Defendants for withholding documents responsive to a subpoena that Plaintiff directed to CDCR, who is a third party in this case. The Court must deny this motion because the subpoena was not directed to Defendants. Moreover, Defendants had no involvement with CDCR's document production, and Scruggs has failed to present any evidence to the contrary. For these reasons, the Court should deny Scruggs's motion.

## II. ARGUMENT

### A. Scruggs cannot compel compliance or seek sanctions against Defendants because the subpoena was directed to CDCR.

Scruggs's motion to compel is based on Federal Rule of Civil Procedure 45, which codifies the procedure for subpoenas and the obligations of the person to whom it is directed. Rule 45 sets forth no duties for persons that are not the subject of a subpoena. Because the subpoena was directed to CDCR, not Defendants, Scruggs has no basis to compel Defendants' compliance or seek sanctions against them. For this reason alone, the Court should deny the motion.

### B. Defendants and their counsel had no involvement with CDCR's response to Scruggs's records subpoena.

Scruggs attempts to circumvent Rule 45 by asserting that Defendants and their counsel orchestrated CDCR's response to Scruggs's records subpoena. But Scruggs failed to present any evidence to support this assertion. All of the e-mail and phone calls that Plaintiff's counsel cited concerning what CDCR produced, and any additional documents that CDCR should or would produce, were exchanged with CDCR staff counsel Hurtado and CDCR's retained outside counsel Nield. None of these communications were with Defendants' counsel, the Office of the Attorney General.

Defendants' counsel's declarations are therefore uncontroverted. Defendants' counsel testified that they and their clients had no involvement with CDCR's document production. (Lien Decl. ¶ 3; Angus Decl. ¶ 3.) They also denied having withheld or destroyed any evidence. (Lien Decl. ¶ 4; Angus Decl. ¶ 4.)

Although Scruggs cites an e-mail from CDCR staff counsel referring Plaintiff's counsel to DAG Angus if he had any further questions, DAG Angus did not initiate that e-mail nor did she not have any discussions with CDCR concerning what documents should be produced. (Angus Decl. ¶ 5.)

And DAG Angus's unwillingness to have Defendants appear for their depositions twice—before and after the resolution of Scruggs's discovery dispute with CDCR—is not evidence of her involvement in hiding documents. DAG Angus was simply protecting Defendants' interests in

not permitting Scruggs to use CDCR's purported non-compliance to have "two bites at the apple." (Angus Decl. ¶ 5.)

Moreover, DAG Angus never forced Plaintiff's counsel to take Defendants' depositions without all the responsive documents. (Angus Decl. ¶ 5.) In fact, DAG Angus offered to postpone the depositions until after the discovery dispute had been resolved, but Plaintiff's counsel refused. (*Id.*) Had Plaintiff's counsel proposed an extension of the time to depose Defendants, or even a continuation of the trial date so that the discovery dispute could be resolved, DAG Angus would have been amenable to it. (*Id.*) But Plaintiff's counsel never made that proposal. (*Id.*)

Based on Scruggs's failure to present any evidence and Defendants' uncontroverted denials of any involvement, the Court should deny this motion.

## III. CONCLUSION

Scruggs cannot compel compliance or seek sanctions from Defendants because the subpoena was not directed to them. Moreover, Defendants had no involvement with CDCR's document production, and Scruggs has failed to present any evidence to the contrary. For these reasons, the Court should deny Scruggs's motion.

Dated: November 22, 2011

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
DAVID A. CARRASCO
Supervising Deputy Attorney General

*/s/ Grant Lien*

GRANT LIEN
Deputy Attorney General
*Attorneys for Defendants Vance, Nelson, and Claborne*

SA2007300304
Scruggs - Defs ' Portion Joint Statement.doc

EDGAR R. NIELD, State Bar # 135018
GABRIELLE DESANTIS NIELD, State Bar # 110980
NIELD LAW GROUP APC
5650 El Camino Real, Suite 120
Carlsbad, CA 92008
Telephone: (760) 929-9880
Facsimile: (760) 929-9788
Email: enield@nieldlaw.com

Attorney for Non-Party,
CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION

No Filing Fee Required
Govt. Code § 6103

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

**ARTAY SCRUGGS**

**Plaintiff,**

**v.**

**S. VANCE, et al.,**

**Defendant.**

**CASE NO. 2:06-CV-0633 KJM-KJN**

**NON-PARTY CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION'S PORTION OF JOINT STATEMENT RE PLAINTIFF'S MOTION TO COMPEL AND REQUEST FOR SANCTIONS**

**Motion to Compel Date: December 8, 2011**

## I. INTRODUCTION

Plaintiff's motion is too lengthy and convoluted to respond to each and every accusation, many of which are distorted, exaggerated or simply untrue. From the beginning of this process, the California Department of Corrections and Rehabilitation (CDCR) has acted in good faith and with due diligence in attempting to respond to the plaintiff's document requests. Any and all information the CDCR has provided to plaintiff's attorney, through its staff members or attorneys was the best information these individuals possessed at the time it was provided. This office, through attorney Gabrielle DeSantis Nield, has also worked in good faith and done its best to interpret and respond to plaintiff's counsel's ongoing demands. Further, there has been no interference, collusion or conspiracy by or with the defendant which has had any impact on the

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

CDCR's response to the document subpoena. (Declaration of Gabrielle De Santis Nield ¶ 3 and 4) and Declaration of Jason Hurtado ¶ 3, 4, 6 and 9).

At this point, all of the documentation sought by the plaintiff, with the exception of a few documents designated as "Confidential" by the CDCR, have been produced. (Declaration of Gabrielle De Santis Nield ¶ 5). As has been indicated many times by the CDCR, through its counsel, it is the intent of the CDCR to request that this Court review the confidential documents in camera, make a determination as to the relevancy of information to the issues in the case, and then make a ruling as to which, if any, of the documents are to be released and pursuant to what conditions as it relates to redaction of the documents and a Protective Order relating thereto. (Declaration of Gabrielle De Santis Nield ¶ 6). The only reason that request has not yet been made to the Court to this point has been the ongoing efforts counsel for the CDCR has been undertaking to assure that the plaintiff has obtained all of the non-confidential documents he is seeking and that they are of the quality he is seeking. Further delay in making the request has been caused by having to respond to this motion. (Declaration of Gabrielle De Santis Nield ¶ 6). Consequently, with the exception of the request that the Court conduct an in camera review of the confidential documents at issue, plaintiff's motion is moot, frivolous and completely without merit. By bringing this motion, it is the plaintiff who is acting in bad faith and as a result, the CDCR is requesting monetary sanctions be accessed against plaintiff and his counsel in the amount of attorneys fees and costs for having to respond hereto.

Some aspects of the plaintiff's purported history of this matter do require some response. First and again, all documentation responsive to plaintiff's document subpoena has now been produced with, as indicated, the exception of the confidential information, the status of which plaintiff has been informed. Nothing has been withheld. Documents claimed illegible have been replaced and the CDCR has not "taken a course of action designed to prevent the plaintiff from gaining access to responsive documents." Further, it has not sent files of responsive documents to the defendants, instead of searching those files itself, and has not failed to conduct a search for all relevant documents or intentionally excluded certain categories of documents. The CDCR denies

that it indicated that it is not required to locate responsive documents regardless of where located within the CDCR system, has not told the plaintiff to look for the documentation outside of its system and has performed a methodical search for relevant documents. (Declaration of Gabrielle De Santis Nield ¶ 3, 4 , 5 and 6 and Declaration of Jason Hurtado ¶ 3, 4, 6, 9 and 10).

As more fully set out below, the only reason that the CDCR is seeking the Court's review of the confidential documents is because of their sensitive nature. Release of this type of information can create very serious health, safety and security concerns as to individuals to which it relates, to third parties which may be identified therein, and to the Correctional Officers and staff tasked with protecting the inmate populations and the institutions in which they reside. (Declaration of Gabrielle DeSantis Nield ¶ 14, 15 and 20). These are overriding considerations which plaintiff's counsel does not appear to appreciate. People's lives can be literally at stake if confidential information is released and finds its way to the wrong hands. Still further, given the health, safety and security concerns which are raised when such information is released, the CDCR's liability exposure for acts of violence or other criminal conduct undertaken as a result correspondingly increases as does its obligations to provide safe environments for all involved. It is for these reasons the CDCR must take all necessary steps to assure that this type of sensitive information is protected. (Declaration of Gabrielle DeSantis Nield ¶ 14, 15, 16, 17, 18 and 20).

## II. FACTUAL SUMMARY

Apparently, pursuant to a Court order allowing for certain discovery on the CDCR, plaintiff prepared the subpoena at issue and claims to have "served" the subpoena upon the CDCR by delivering it to a security officer in the building where the CDCR's "Office of Legal Affairs" is located. This service was improper. Typically subpoenas seeking inmate information directed to the CDCR are served at the institution where the inmate at issue is housed and where documents relating to them are located. It is at these locations where the appropriate records custodians are employed to, among other things, respond to the requests, not the CDCR's Office of Legal Affairs. (Declaration of Jason Hurtado ¶ 2 and 4). Regardless Mr. Hurtado, apparently to his detriment, waived this requirement in an attempt to assist plaintiff's counsel in obtaining the documentation

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

sought. Because this matter was in litigation, the "C-files" of the individuals to whom the document requests related, had been moved at the request for the Attorney General's Office (AG), counsel for the CDCR employee defendants, from their local institutional locations to the Case Records Headquarters in Sacramento, unbeknownst to Mr. Hurtado or the several local Litigation Coordinator's he contacted in his efforts to locate the files at issue. The files were moved to allow the AG's access to them in preparation for the depositions of the CDCR employee defendants, one of the standard practices in these situations. (Declaration of Jason Hurtado ¶ 3, and 4).

Initially Mr. Hurtado, based upon information he received during his efforts to locate the documents, mistakenly believed the records regarding Mr. Sruggs were located at Atascadero State Hospital because he had been transferred to that location. Based upon this information he suggest to plaintiff's counsel that he might look there for the documents he was seeking. (Declaration of Jason Hurtado ¶ 3 and 4). However, he thereafter determined that they were at the Case Records Headquarters at which point he authorized release of the documents sought pursuant to the subpoena, notwithstanding improper service of the subpoena. Mr. Hurtado was not personally involved in interpreting the subpoena and determining what documents to produce based thereon. This is not one of his responsibilities in that he is not the custodian of the records involved. This is why persons directing subpoenas to the CDCR are asked to direct them to the institutions where the inmates at issue are housed. (Declaration of Jason Hurtado ¶ 4 and 6).

As conceded within the plaintiff's motion, documentation relating to both his client, Mr. Scruggs and Mr. Robinson was provided to the plaintiff's counsel based upon good faith interpretation of the subpoena by case records administrator, Ms. Marilyn Ouye on or about September 15, 2011 with the assistance of case records analyst Paula Sholberg. Believing that the subpoena had been properly responded to, Mr. Hurtado indicated such in an email to plaintiff's counsel dated September 30, 2011. (Declaration of Jason Hurtado ¶ 6 and 7).

Thereafter, Mr. Hurtado received an email in response from plaintiff's counsel suggesting certain deficiencies in the earlier document production and demanding a further production of documents. At this point, Mr. Hurtado determined that the matter should be assigned to outside

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

counsel to assure that the plaintiff's subpoena was properly responded to and this office, the Nield Law Group APC, was retained as counsel for the CDCR with respect thereto. (Declaration of Jason Hurtado ¶ 8). The attorney's with the Nield Law Group have been handling CDCR subpoena matters for over six years and officially began its representation of the CDCR with respect to the subpoena on approximately October 6, 2011. (Declaration of Gabrielle DeSantis Nield ¶ 2 and 3). From that point forward this office has done everything it can to assure that plaintiff's document subpoena has been properly responded to, including requesting a complete reproduction of the documents to assure everything responsive was provided. We did raise potential objections based on the grounds that in certain respects the document requests appeared overly broad, vague and ambiguous but never relied on that potential objection to withhold any of the documentation sought. (Declaration of Gabrielle DeSantis Nield ¶ 3 and 5).

The only other issue which has been raised is the issue of confidential documentation. This information was previously overlooked by the case records analyst who initially responded to the subpoena given the CDCR's requirement Confidential Records are not to be released without a Court Order relating thereto, which did and does not exist here, which is based on a number of statutes, regulations and corresponding case law. However, this office determined there may be some confidential material which might be relevant to the underlying matter at issue and informed plaintiff's counsel that we intended to request that the Court undertake an in camera review of the documentation, as set out more fully below. (Declaration of Gabrielle DeSantis Nield ¶ 5 and 6).

Plaintiff's counsel argues that any objection based upon confidentiality should be deemed waived given that it was not raised prior to the time the matter was assigned to outside counsel and that this consideration should outweigh the serious health, safety and security risks to all involved, both inside and outside the CDCR institutions and the commensurate CDCR liability exposure associated therewith. The CDCR maintains that under these circumstances, whether the waiver argument either exists or should be determinative of this issue should be left to the discretion of the Court.

There has not been, and will not be, any prejudice to the plaintiff as it relates to his

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

production requests, which have now been satisfied with the exception of the confidential documents. The request that the Court review the confidential documents regarding relevance and the terms of their release is not burdensome to the plaintiff and is dictated given the significance of the information at issue.

**III. ARGUMENT**

**1. <u>The CDCR did conduct a Diligent Search for the Documents Requested.</u>**

Plaintiff's counsel's assertions to the contrary notwithstanding, the CDCR did conduct a diligent search of the documentation requested pursuant to his subpoena and, with the exception of the confidential documents, has produced them. (Declaration of Gabrielle De Santis Nield ¶ 3, 4 , 5 and 6 and Declaration of Jason Hurtado ¶ 3, 4, 6, 9 and 10). Plaintiff's counsel's assertion that he ultimately determined that all of the information he sought may not have been included initially does not change this fact. As noted, there was initial confusion as to the location of the files at issue. Ultimately, the files were located and the record analysts involved provided the documentation believed to be responsive to the plaintiff's request. (Declaration of Jason Hurtado ¶ 3, 4, 6, 9 and 10). Since the matter has been handled by the Nield Law Group, further diligent efforts have been made to assure that all of the documentation requested by the plaintiff, to the extent that it exists, has been provided. This included a reproduction of all of the documentation at issue, and a close comparison of the reproduced documentation with the initial production, to assure that all documentation at issue, again with exception of the confidential documentation, has been produced. Still further, that comparison revealed that most of the documentation had been produced initially, making plaintiff's claims to the contrary somewhat disingenuous. (Declaration of Gabrielle De Santis Nield ¶ 3, 4 , 5, 6, 8, 9, 10, and 11).

**2. <u>The CDCR has not Provided "Ever Changing Excuses" for failing to comply.</u>**

First, the CDCR has not failed to comply with the plaintiff's document subpoena request. Second, while the Nield Law Group noted certain objections which might apply to the requests none, with the exception of that relating to confidential documentation, has been acted upon. Without the opportunity to inform the Court of the nature and extent of the confidentiality issues

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

of concern and the seriousness of the risks at issue, the CDCR respectfully submits that the confidentiality issue has not been fully considered by the Court. Further, Plaintiff's contention to the effect that the Nield Law Group denied problems with earlier productions is "plainly false". Plaintiff has produced no evidence to the contrary. (Declaration of Gabrielle De Santis Nield ¶ 3, 4 , 5 6, 8, 9, 10, and 11 and Declaration of Jason Hurtado ¶ 3, 4, 6, 9 and 10).

**3. There is no Merit to the Claim that the CDCR Failed to Produce Documents to the Plaintiff while at the same time Providing Documents to the Defendants.**

Defense counsel from the AG's office did review the C-files of the individuals at issue, and apparently copied documentation they felt was pertinent to the defense of their clients. The case records analyst at the case records headquarters, also pursuant to the plaintiff's subpoena, made copies of the documents she felt were responsive to the plaintiff's subpoena and sent them to the plaintiff's counsel. The fact that the defense counsel also copied records from the same files is inconsequential. Any issues the plaintiff may have with respect to depositions in the case do not involve the non-party CDCR. (Declaration of Jason Hurtado ¶ 4, and 7).

The documentation the CDCR believes the plaintiff is claiming exists but has not been produced are referred to as a form "CDC-154" and EOP Rosters. Contrary to plaintiff's assertion, a CDC-154 it is not a form that inmates sign to indicate that they have consented to living together and the exhibits cited to for that proposition do not support that claim. They are also not documents that are kept in an inmate's C-file. If there was a situation where an inmate's consent to a cellmate was required, that document would be a "128-B Chrono" which would be placed in the inmates C-file, not a CDC-154.

Regardless, at this time, the CDC-154 documents and the EOP documents sought by the plaintiff no longer exist. It is the CDCR's policy to purge the CDC-154 forms on an annual basis and the EOP Rosters every three years. (See Declaration of Linda Young ¶ 2).

**4. At no Time has the CDCR ever "Stalled" or "Stonewalled" in Attempting to Respond to Plaintiff's Subpoena nor Refused to Comply with the Subpoena.**

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

As already discussed ad nauseam, the CDCR has never refused to comply with the plaintiff's subpoena but rather has gone to a great deal of effort and expense to respond. It is plaintiff's counsel who has refused to sign the CDCR's standard Protective Order relating to the documentation, which the CDCR's counsel has used in hundreds of subpoena matters over the years, with few objections. Plaintiff's counsel was asked to provide more detail as to the documentation he sought, so that the CDCR could assure that its response would be complete. Simple statements to the effect that he did not have all of the documents at issue were not helpful. (Declaration of Gabrielle De Santis Nield ¶ 3, 4 , 5 6, 8, 9, 10, and 11 and Declaration of Jason Hurtado ¶ 3, 4, 6, 9 and 10).

As indicated, the CDC-154 forms for the dates at issue, no longer exist. Color copies of the photographs requested, have been provided. All electronic reports concerning housing assignments and cell mates also have been provided as to both Mr. Robinson and the plaintiff. The EOP Rosters indicating cell block incidents, bed moves, staff concerns and other information related to housing and celling no longer exist. Ms. Nield informed Plaintiff about the status of the EOP Rosters and the CDC 154s when she made a second request that the Plaintiff stipulate to a short Continuance on the hearing of the Motion to Compel and allow CDCR a short extension to file its portion of the Joint Statement, which plaintiff counsel rejected. (Declaration of Gabrielle De Santis Nield ¶ 12). Neither the CDCR nor its counsel has ever indicated that necessary searches for this information were not undertaken or that more time was required. (Declaration of Gabrielle De Santis Nield ¶ 3, 4 , 5 6, 8, 9, 10, and 11 and Declaration of Jason Hurtado ¶ 3, 4, 6, 9 and 10).

The issue concerning the confidential documentation at issue has already been discussed. Given the serious consequences involved, Court orders are required for the release of confidential information and there is nothing in the Court order in existence or the document subpoena which addresses this issue in any way.

**5. <u>The CDCR has not Failed to Comply with the Letter and Spirit of Discovery Obligations, nor Intentionally Violated Plaintiff's Subpoena.</u>**

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

The plaintiff contends that because in his view objections to the subpoena and/or a Motion to Quash were not filed by the deadline specified in the subpoena or 14 days after service of the subpoena, that all objections to the subpoena have been waived. For the most part, this argument is moot in that the CDCR has not attempted to assert any objections beyond those relating to the confidentiality of a small amount of documentation at issue. Given the seriousness of the health, safety and security concerns involved, this is not an objection that the CDCR or its counsel will agree to waive. (Declaration of Gabrielle DeSantis Nield ¶ 13, 14 , 15, 16, 17 and 18).

The CDCR believes that it is at the discretion of the Court to determine whether that objection is valid and to issue an order relating thereto. The CDCR will certainly comply with any ruling the Court makes relating to the release, non-release and possible redaction of any of the confidential documents at issue once the Court has had the opportunity to review those documents. Again, the CDCR does not believe the Court contemplated the release of highly sensitive confidential information at the time it issued its order relating the re-opening of discovery.

Further, the argument that the CDCR is intentionally withholding documents apparently goes to the contention that the CDCR's request for an in camera review of the confidential documentation by the Court is somehow an intentional withholding of documents. This is simply not the case. (Declaration of Gabrielle De Santis Nield ¶ 6). The relevance of the documents at issue and a determination as to which documents, if any, should be released, is for the Court to decide. Again, once that decision is made, the CDCR will comply with any orders relating thereto.

**6. There has been any no Coordination or Collusion between the CDCR and Defense Counsel as it relates to the handling of those Requests.**

Plaintiff's counsel makes a completely unsubstantiated claim that somehow and in some way the CDCR has conspired with the defendant to deny the plaintiff documentation sought pursuant to his subpoena. This is simply not the case. While the defendants can speak for themselves, the CDCR has never consulted, spoken to, communicated with or sought direction from the defendants in any way as to how it should respond to the plaintiff's subpoena request. (Declaration of Jason Hurtado ¶ 4, 6 and 10). Still further, outside counsel has had no

communication with the defendants relating to its handling of the CDCR's response to the plaintiff's document subpoena requests. There has been no "hiding of the ball", collusion or conspiracy and any assertion to that affect is pure fantasy. The defendant's counsel has no "control" over the CDCR's files other than the ability to obtain access to them when required for the defense of the CDCR employees at issue. Through the subpoena process, plaintiff's counsel has had the same access and has been provided all of the documentation responsive to his requests. (Declaration of Gabrielle De Santis Nield ¶ 4).

**7. <u>Given the Sensitive nature of the Confidential Documents at issue, the CDCR requests that the Court undertake an In Camera Review of the Documents.</u>**

As discussed, given the confidential nature of the limited documentation which has not been produced to date, the CDCR hereby requests that the Court either issue an order quashing that aspect of the plaintiff's document subpoena or conduct an in camera review of the confidential documents. The in camera review would be undertaken to determine whether they have any relevance to the underlying case and to weigh the interests of the CDCR, a governmental entity, in protecting the information versus the plaintiff's need for the information. Should the Court determine that any of the documents at issue are relevant and should be produced the CDCR would further request that the Court also determine whether any portions of those documents should be redacted, again based upon relevancy and competing interest considerations and require the any release of the information, if any, to be subject to an appropriate Protective Order.

The CDCR's objection to the production of confidential information is based upon a number of grounds. The records being sought are protected from production based upon a qualified privilege for "official information" recognized under federal common law. They are also protected pursuant to federal statutory pursuant to Federal Rule of Civil Procedure Rule 45 (c)(3)(A)(iii) and (iv) relating to the disclosure of privileged and protected materials. Protections also exist based upon the privacy rights of the individuals whose personal information is being sought and of those of their family members and associates whose private information might also be disclosed by the release of such records. Further, while not controlling on the Federal Courts,

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

confidential records are also protected from production by a myriad of California state laws aand regulations including, but not limited to, California EVIDENCE CODE §§ 1040, 1043, 1045 and 1047, California CIVIL CODE § 1798.1 et seq., California GOVERNMENT CODE § 6254 and California PENAL CODE § 832.7.

a. The Information sought is protected from production pursuant to the Federally recognized qualified immunity for "Official Information".

Federal common law recognizes a qualified privilege from production for "official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990). The official information privilege is grounded in the recognition that "disclosure of at least some kinds of information developed by law enforcement could harm significant governmental interests." *Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D.Cal. 1987). "To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages; if latter is greater, official information privilege bars discovery." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir.1990), *Exxon Shipping Co. v. United States Dept. of Interior* (1994 CA9 Alaska) 34 F.3d 971 and *Zaustinsky v. University of California* 6 F.R.D. 622, 625 (N.D.Cal. 1983). Such balancing should be conducted on a case-by-case basis to determine what weight each relevant consideration deserves in the fact-specific situation that is before the Court. *(Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D.Cal.1987).

The Kelly court lists factors to be considered in balancing the plaintiff's interest in disclosure against the government's interest in confidentiality. The relevant factors are repeated here:

"(1) The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

(2) The impact upon persons who have given information of having their identities disclosed;

(4) Whether the information sought is factual or an evaluative summary;

(10) The importance of the information sought to the plaintiff's case."

(*Kelly*, supra, 114 F.R.D. at 663.)

In this case, disclosure of the files identified above could negatively impact and threaten both governmental and privacy interests. Some of the information at issue has been deemed confidential pursuant to California CODE OF REGULATIONS, Title 15 § 3321, which in pertinent part defines confidential information as:

> (1) Information which, if known to the inmate would endanger the safety of any person.
>
> (2) Information which would jeopardize the security of the institution. . . . .

The confidential information at issue might include informant or other similarly sensitive information which if released could raise issues concerning the health and safety to inmates at issue, third parties who might be also identified therein as well as possibly their families and associates both inside and outside of the institutions in which they are housed. Release of such information could also cause security concerns given altercations and disturbances which could arise as a result effort to extract retribution or revenge for those seen as providing information to authorities or even perceived as cooperating with authorities in any way. Such disturbances could in turn put the health and satiety of Correctional Officers and staff tasked with maintaining the peace and security of the institutions that might be affected, by having to respond to such altercations and other third parties caught in the crossfire so to speak. (See Declaration of Gabrielle DeSantis Nield ¶ 14, 15 and 20).

Another byproduct of production of confidential information is the chilling effect it is known to have on the willingness of inmates within the system and witnesses outside of it to provide confidential information for fear of serious repercussions. It is common knowledge within the Department that when it becomes known to inmates providing confidential information to CDCR officers and employees that the information provided may not remain confidential and might possibility be released, they decline to provide such information, at the risk of being exposed, thus thwarting the judicial process and hindering the administration of the CDCR's various institutions. (See Declaration of Gabrielle DeSantis Nield ¶ 16 and 20).

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

Still further is the concern and concomitant expense that may arise when inmates whose confidential information is to be released become aware of that fact pursuant to the notification process required by California CIVIL CODE §1798.1, et seq. Not only does release of confidential information discourage inmates and others from providing any further information as noted above, but it also causes many of them to seek special protections, such as assignment to special needs yards, administrative segregation and transfers to other institutions, which are in themselves costly, time consuming and burdensome. (See Declaration of Gabrielle DeSantis Nield ¶ 17 and 20).

b. Federal Rule of Civil Procedure 45 also provides protections against disclosure of privileged or otherwise protected information.

Federal Rule of Civil Procedure 45(c)(3)(A)(iii) and (iv) states that a court may quash or modify Subpoena if it:

> (iii) requires disclosure of privileged or other protected matter and no exception or wavier applies, or
>
> (iv) subjects a person to undue burden.

Here, at least a portion of the information being sought has been designated as confidential, privileged and protected pursuant to the CDCR's own internal policies and guidelines and various state statutes relating thereto (as discussed below). Consequently it should be protected against production given its privileged and protected status. These protections against disclosure specifically apply in situations where government documents such as those at issue here, are being sought. (See *Exxon Shipping Co. v. United States Dep't of Interior* (1994) 34 F3d 774). Given the important governmental interests at issue here, an in camera review of the documentation being requested should be undertaken, in light the protections and privileges at issue, before the CDCR is required to produce any of information being sought. (Also see Federal Rule of Evidence 1101(c) which states: "The rule with respect to privileges applies at all stages of all actions, cases, and proceedings").

/ / /

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

c. The Individuals Constitutional Right to Privacy also provides protection from disclosure.

The right to privacy is one of the basic rights afforded to individuals both within federal and state law. "All people are by nature free and independent and have inalienable rights. Among these are... pursuing and obtaining safety, happiness, and privacy." California Constitution Article 1, Section 1. Individuals rightfully expect the types of information provided to authorities in confidence be kept private and those privacy rights should not sacrificed absent a compelling countervailing interest. The CDCR submits such an interest might not exist here, although without any expression of that interest by the Plaintiff it is difficult to determine.

d. California state law also provides protections against the disclosure of personnel files.

While not controlling in the Federal Courts, California state law is at least informative as it relates to the various protections personal types of information are afforded. As briefly noted above, California EVIDENCE CODE §§ 1040, 1043, 1045 and 1047, California CIVIL CODE § 1798.1 et seq., California GOVERNMENT CODE § 6254 and California PENAL CODE § 832.7 among others would apply to provide some protection against disclosure of the type of confidential information being sought by the plaintiff.

These provisions generally provide protections against the production of documents deemed confidential because of the potential that the indefinites of informants or other confidential information, again as defined by CCR Title 15 § 3321, might be revealed creating the health, safety and security concerns discussed above. Additionally, California CIVIL CODE § 1798.1 et seq. requires that appropriate notice to provide to those individuals, including any third parties whose personal information is to be released, even if that information amounts to no more than their name, and that they be provided a reasonable opportunity to object thereto.

Although these same protections and privileges are not set out under federal law, the spirit of these types of protections is embodied in both the federal common law "official information" privilege and Rule 45(c)(3)(A)(iii). It is also the type of information that should be provided to

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

the Court for an in camera review in order to allow the Court to properly weight the competing interests regarding whether the documentation sought should be disclosed.

Again, while not controlling on the Federal Courts, unless state law issues are to be decided (See Federal Rule of Evidence 501), these provisions are instructive as to how this type of information should be treated and protected in the discovery process and the significant showing of countervailing interests and/or need that should be required of parties seeking this type of information before such information is disclosed.

e. Should the Court order production of any of the requested information, a Protective Order relating thereto is requested.

"[T]he broad power of the trial Court to fashion . . . discovery procedures satisfying, so far as possible, the legitimate needs of all parties, includes the power to issue protective orders preventing unjustified use of the requested materials." (Millaud v. Sup. Ct. (1986) 182 Cal.App.3d 471, 476.)

Should the Court order production of any of the requested information pursuant to the plaintiff's subpoena, the CDCR hereby requests a Court order that an appropriate Protective Order be executed by all parties relating to any information the Court determines should be released, limiting the use, dissemination and accessibility of the confidential information at issue.

**7. Sanctions are not Warranted against the CDCR as it Relates to its Response to the Plaintiff's Subpoena Requests**

Based upon all of the above, there is no basis upon which to sanction the CDCR for its response to the plaintiff's document subpoena. Though problems were encountered in locating documentation initially and some delays occurred as a result, there was no bad faith, conspiracy or other wrongful conduct on which to base a request for sanctions. Throughout the process the CDCR, its employees and now its outside counsel have made good faith and diligent efforts to provide plaintiff's counsel with the documentation he is seeking. Outside counsel went s far as to have a complete reproduction of the documentation requested undertaken. The response has now been completed and with the exception of the confidential documentation, no further responsive

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

documents exist.

However, the same cannot be said of plaintiff's counsel. Plaintiff's counsel has been aware, particularly since the matter was transferred to outside counsel, that every effort was being made to provide the documentation pursuant to the subpoena. There was numerous communications both by telephone and email, many of which have been attached to plaintiff's motion, which indicate an ongoing exchange and effort to assure that plaintiff received the documentation he was seeking. Although plaintiff's counsel may not be happy with the CDCR's position with respect to the confidential information at issue, it is not an indication of bad faith on the part of the CDCR or its counsel. That position is not only prudent, but necessary under the circumstances and under the law. Although plaintiff's counsel may not agree, it is the CDCR's position that the issue it is for the Court to decide.

Further, the CDCR maintains that the plaintiff's filing of his motion, in the face of the good faith efforts that were being made to respond to the subpoena, including incurring the cost, at taxpayers' expense, of outside counsel to assist in this regard is completely without merit, frivolous and undertaken in bad faith. Plaintiff's counsel notified of and understood the position the CDCR was taking with respect to the confidential information at issue. Plaintiff's counsel also knew that every effort was being made to respond to his subpoena. There is absolutely no evidence of collusion, conspiracy or bad faith necessary to support a request for sanctions.

Still further Plaintiff's counsel did not inform this office that a Motion to Compel was being filed until off handily mentioning it during a November 3 conversation when CDCR's counsel. CDCR's counsel reassured Plaintiff's counsel that the necessary expense and time involved in filing and responding to such a motion was unnecessary and was surprised that such a such a Motion was being considered given the efforts were being made to respond to Plaintiff's continuing requests. Yet, plaintiff went forward with filing the Motion and serving same on or around November 11, 2011. Plaintiff's counsel never met and conferred with respect to the motion or laid out his arguments as to why he believed the CDCR, or its counsel, were somehow operating in bad faith. By the time the motion was received, all of the documentation requested,

NIELD LAW GROUP APC
5650 EL CAMINO REAL, STE. 120
CARLSBAD, CAILFORNIA 92008
TELEPHONE (760) 929-9880 FAX (760) 929-9788

again except for the confidential documents, had been produced and counsel was aware of the CDCR's intention to submit the confidential information to the Court for review.

In the view of the CDCR, this made plaintiff's motion moot and many requests were made that the motion be taken off calendar. Plaintiff's counsel refused. . (See Declaration of Gabrielle DeSantis Nield ¶ 6 and 10). Thereafter, a request was made for a short continuance of the hearing date to allow the CDCR additional time to respond to the motion to compel, which was also refused, requiring an ex parte request for the allowance of additional time to respond. . (See Declaration of Gabrielle DeSantis Nield ¶ 12).

Because all of this effort and expense of opposing plaintiff's frivolous motion was unnecessary and has come at a significant cost to the taxpayers of the State of California, CDCR requests that monetary sanctions in the amount of $ 5,040 be awarded against plaintiff, and his counsel, for the pursuit of this meritless, unwarranted and unnecessary motion.

**IV. CONCLUSION**

Based upon all of the above and the declarations and exhibits filed in support thereof, Non-Party CDCR respectfully requests that the Court deny plaintiff's Motion to Compel Production of Documents and the accompanying request for sanctions. Further given the frivolous and unwarranted nature of the plaintiff's Motion to Compel the CDCR would request that the Court issue monetary sanctions again the plaintiff and his counsel in the amount of $5,040.00.

DATED: December 1, 2011

Respectfully submitted,

NIELD LAW GROUP APC

By: *<u>/s/ Gabrielle De Santis Nield</u>*
Edgar R. Nield
Gabrielle De Santis Nield,
Attorney for Non-Party CDCR