IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARTAY SCRUGGS,

      Plaintiff,                No. 2:06-cv-0633 KJM KJN P

   vs.

S. VANCE, et al.,

      Defendants.        <u>ORDER</u>

_____/

      Plaintiff is a state prisoner, presently housed at Atascadero State Hospital ("ASH"), and proceeding through counsel.  Plaintiff's motion to compel discovery and for sanctions came on for hearing December 8, 2011.  Joanna H. Kim and Brian M. Rothschild appeared for plaintiff.  Edgar R. Nield appeared for nonparty California Department of Corrections and Rehabilitation ("CDCR").  Grant Lien, Deputy Attorney General, appeared for defendants.

I.  <u>Plaintiff's First Amended Complaint</u>

      Plaintiff claims that while he was housed at California State Prison - Sacramento, located in Folsom, California, defendants Claborne, Nelson and Vance violated plaintiff's Eighth Amendment rights by failing to protect plaintiff from an inmate who was known to have a mental illness.  (Dkt. No. 26 at 10-11.)  Plaintiff seeks actual and punitive damages.

II. <u>Prior Court Orders re Discovery</u>

On August 4, 2011, the court partially granted plaintiff's motion to reopen discovery, and ordered plaintiff to notice defendants' depositions as soon as practicable, but that the depositions were to be completed on or before November 1, 2011. (Dkt. No. 134 at 4.) The parties were warned that the "**court is not inclined to grant any further extensions for either party.**" (<u>Id.</u> (emphasis added).) On August 24, 2011, the court granted in part plaintiff's request to conduct limited additional discovery. (Dkt. No. 140.) The court granted plaintiff's request to subpoena certain documents from the CDCR, and reminded the parties of their obligations concerning discovery. Specifically, the court stated:

> defendants' counsel is reminded that plaintiff's counsel is entitled to all documents defendants have to support their case. Fed. R. Civ. P. 26(a)(1)(A)(i) & (ii). The parties are under a continuing obligation to supplement discovery disclosures. Fed. R. Civ. P. 26(a)(1)(E). **Both counsel are instructed to cooperate in the exchange of discovery so this stale case may be resolved expeditiously**. Finally, defendants identified the documents intended to be offered as exhibits at trial in their pretrial statement, which are clearly set forth in the court's June 27, 2011 order. (Dkt. No. 126 at 8.) Therefore, plaintiff's application to request the production of documents set forth in plaintiff's exhibit A is granted. (Dkt. No. 137-1.) Within 14 days of the date of this order, defendants shall produce to plaintiff's counsel copies of all documents intended to be offered by defendants as exhibits at trial identified in their pretrial statement.

(Dkt. No. 140 at 2 (emphasis added).) Despite this court order, two days later, in response to plaintiff counsel's request for a discovery conference, defendants' counsel sent an email on August 26, 2011, stating:

> Since this case started out as a pro se inmate case, Rule 26 discovery rules do not apply. Thus, the documents identified in Defendants' previously-filed pretrial statement - <u>and that we are currently in possession of</u> [-] are what will be produced within the court-ordered deadline. Since discovery is continuing, it is possible that Defendants will identify additional documents to be used at trial and we will of course identify and/or produce those as required by the Federal Rules of Civil Procedure, Eastern District Local rules, and Court orders. It should be noted that Defendants have not yet identified with any definitiveness what documents

1              Defendants will use as exhibits at trial and the Court did not order
us to produce such documents.

2

3   (Dkt. No. 149-1 at 27.)

4           To be clear, now that both parties are represented by counsel, Rule 26 of the

5   Federal Rules of Civil Procedure does apply to this action.  Given the age of this case, counsel

6   for all parties are directed to cooperate in discovery.

7   III.  <u>Efforts to Obtain Subpoenaed Documents</u>

8           As early as 2008, plaintiff, no longer incarcerated in state prison but housed at

9   ASH, and proceeding without counsel, attempted to obtain copies of documents held in

10   plaintiff's central file.  (Dkt. No. 149-1 at 12.)  On June 23, 2008, defendants responded to

11   plaintiff's pro se request for production of documents from plaintiff's central file, stating:

12              under title 15, section 3370(c), Plaintiff can request a review of his
central file.  Plaintiff should address his request to the Litigation

13              Office, CSP-LAC, 44750 60th Street W, Lancaster, CA  93536,
which is where these records are currently stored while Plaintiff is

14              at Atascadero State Hospital.

15   (Dkt. No. 149-1 at 13.)

16           On August 26, 2011, at 10:17 a.m., the subpoena at issue herein was personally

17   served on Cindy Scholl, Staff Services Analyst, at 300 Prison Road, Folsom, California  95630.

18   (Dkt. No. 149-1 at 26.)  The subpoena was addressed to the Custodian of Records for CDCR.

19   (<u>Id.</u>)  The subpoena provided for production of documents on September 16, 2011, at 10:00 a.m.,

20   and sought the following documents:

21              1.  All documents (including but not limited to CDC 634 incident
packages, reports, notes, memoranda, or interview summaries or

22              transcripts) in Your possession, custody, or control relating to any
incidents or occurrences between (i) the date Robinson [footnote

23              omitted] was first housed at CSP-Sac or September 1, 2003,
whichever is earlier, and (ii) May 20, 2004 (but in no event more

24              than three years prior to (ii)) of Robinson's involvement in
incidents of violence, confrontations (including violent and non-

25              violent confrontations), altercations, or arguments.

26   ////

2.  All documents including but not limited to CDC 634 incident packages, reports, notes, memoranda, or interview summaries or

 transcripts) in Your possession, custody, or control relating to complaints by other inmates, or by Your employees, staff, professionals, guards, or other personnel, relating to violence, propensity for violence, or threats of violence by Robinson between (i) the date Robinson was first housed at CSP-Sac or September 1, 2003, whichever is earlier, and (ii) May 20, 2004, (but in no event more than three years prior to (ii)) while Robinson was incarcerated.

3.  All documents in Your possession, custody, or control (including but not limited to CDC 634 incident packages, reports, notes, memoranda, or interview summaries or transcripts) relating to any incidents or occurrences between September 1, 2003, and May 20, 2004, while Scruggs was incarcerated of Scruggs' involvement in violence, confrontations (including violent and non-violent confrontations), altercations, arguments, or similar incidents, including all CDC 634 incident packages or similar documents.

4.  All documents in Your possession, custody, or control (including but not limited to CDC 634 incident packages, reports, notes, memoranda, or interview summaries or transcripts) relating to complaints by other inmates, by employees, staff, professionals, guards, or other personnel, relating to violence, propensity for violence, or threats of violence by Scruggs between September 1, 2003, and May 20, 2004, while Scruggs was incarcerated.

5.  All documents in Your possession, custody or control relating to determination of cell or housing status of Robinson between (i) the date Robinson was first housed at CSP-Sac or September 1, 2003, whichever is earlier, and (ii) May 20, 2004, (but in no event more than three years prior to (ii)) while Robinson was incarcerated, including minutes of any meetings of the Institutions and Classifications Committee, Interdisciplinary Treatment Team, or any similar entity.

6.  All documents in Your possession, custody or control relating to determination of cell or housing status of Scruggs between September 1, 2003, and May 20, 2004, while Scruggs was incarcerated, including minutes of any meetings of the Institutions and Classification Committee, Interdisciplinary Treatment Team, or any similar entity.

7.  All documents in Your possession, custody or control relating to any and all procedures governing the response to inmate-on-inmate violence and threats of inmate-on-inmate violence that were in effect in May of 2004 at CSP-Sac.

(Dkt. No. 149-1 at 23-24.)

On September 1, 2011, counsel for plaintiff spoke with Jason Hurtado, counsel for CDCR, to inquire about the production.  (Dkt. No. 149-1 at 3.)  Plaintiff's counsel sent Mr. Hurtado a copy of this court's August 24, 2011 order.  (Dkt. No. 149-1 at 30.)  During this conversation, Mr. Hurtado informed plaintiff's counsel that service of the subpoena duces tecum was improper pursuant to policies and procedures of the CDCR.  (Dkt. No. 149-5 at 2.)  Despite the alleged improper service, Mr. Hurtado set about locating the central files of plaintiff and inmate Robinson.  (Id.)

On September 14, 2011, plaintiff's counsel again called CDCR counsel, Mr. Hurtado, who informed plaintiff's counsel that the litigation office did not have access to the inmate files, and that despite Mr. Hurtado's efforts, Mr. Hurtado was unable to locate them.  (Dkt. No. 149-1 at 3, 149-5 at 2.)  Mr. Hurtado suggested that plaintiff's central file may have been transferred to ASH with plaintiff.  (Id.)

Accordingly, on September 15, 2011, plaintiff's counsel contacted ASH requesting access to plaintiff's prison files, but was told that the Department of Mental Health, which controls ASH, does not maintain or have access to patients' prior prison files.  (Dkt. No. 149-1 at 4.)  On September 29, 2011, plaintiff's counsel confirmed that no prison records (except certain medical records) for plaintiff were housed at the Department of Mental Health.  (Dkt. No. 149-1 at 4.)

Significantly, later on September 14, 2011, Mr. Hurtado received correspondence from legal analyst Angie Brodbeck of the office of the Attorney General, who told Mr. Hurtado that both files were now located at case records headquarters in the possession of case analyst Paula Sholberg.  (Dkt. No. 149-5 at 3.)  Mr. Hurtado declares that it is his understanding that Marilyn Ouye, Correctional Case Records Administrator assisted Sholberg in producing certain nonconfidential documents relating to both inmate Robinson and plaintiff to plaintiff's counsel on or about September 14, 2011.  (Id.)  However, despite CDCR counsel having received

1  information that what he told plaintiff's counsel earlier that day concerning the location of the

2  files was incorrect, Mr. Hurtado apparently made no effort to inform plaintiff's counsel that the

3  files had been located.

4          On September 16, 2011, plaintiff's counsel received approximately 110 pages of

5  documents from CDCR, of which 11 pages related to plaintiff.  (Dkt. No. 149-1 at 4.)  At least 31

6  pages of the production were copied in a manner so as to cut off or render portions of the

7  documents unreadable.  (Id.)  The documents referred to 112 digital photos relating to inmate

8  Robinson's assault on plaintiff, but no photographs were included in the production.  (Id.)

9          On September 28, 2011, plaintiff's counsel emailed CDCR counsel, Mr. Hurtado,

10  noting that CDCR produced only 11 documents relating to plaintiff, and asked Mr. Hurtado to

11  confirm that those documents were the "only documents or records in the CDCR's possession,

12  custody, and control responsive to requests 3, 4 and 6 of the subpoena."  (Dkt. No. 149-1 at 4.)

13  The September 28 email listed the 11 documents by name.  (Dkt. No. 149-1 at 32.)

14          On September 30, 2011, Hurtado emailed plaintiff's counsel, stating:

15        The CDCR has provided documents responsive to the subpoena
      issued by your office and pursuant to the language of Magistrate

16        Judge Kendall Newman's, August 23, 2011 order.  Should you
      have any further questions pertaining to the Scruggs case, please

17        direct them to Deputy Attorney General Michelle Angus.

18  (Dkt. No. 149-1 at 34.)[1]

19          On October 4, 2011, at 5:33 p.m., plaintiff's counsel emailed Mr. Hurtado, with a

20  copy directed to defendants' counsel, DAG Michelle Angus, informing Mr. Hurtado that it was

21  still not clear that the CDCR had fully complied with the subpoena and court order, and asked

22  him to consider the email as a meet and confer communication for purposes of Local Rule

23  251(b).  (Dkt. No. 149-1 at 37.)  Plaintiff's counsel reiterated his disbelief that there were only 11

24  documents related to plaintiff that were responsive to the subpoena, and pointed out certain

25   

26       [1] It is unclear why counsel for CDCR was directing plaintiff's counsel to a Deputy AG,
who was counsel for defendants, concerning a subpoena served on CDCR.

1  deficiencies in the production.  (Id.)  Finally, plaintiff's counsel advised Mr. Hurtado that

2  defendants' depositions were set for October 12, 2011, and counsel needed the documents no

3  later than October 7, and asked Mr. Hurtado to call at his "earliest convenience to discuss these

4  matters."  (Dkt. No. 149-1 at 38.)

5         After receiving the October 4 email, Mr. Hurtado determined that the matter

6  "would best be handled by outside contract counsel," and contacted the Nield Law Group.  (Dkt.

7  No. 149-5 at 3.)  On October 6, 2011, the law firm Nield Law Group was retained to represent

8  nonparty CDCR.  (Dkt. No. 149-4 at 2.)

9         On October 6, 2011, forty-five days after the subpoena was personally served,

10  plaintiff's counsel received a phone call from Gabrielle Nield, informing him of her

11  representation of CDCR, and advising that the "subpoena was overly broad and contained

12  requests for confidential information which CDCR would not produce."  (Dkt. No. 149-1 at 5.)

13  Plaintiff's counsel advised her of the court's August 24 order, and Ms. Nield requested a copy.

14  (Id.)  Later that day, Ms. Nield sent plaintiff's counsel an email, claiming that there was an issue

15  related to proper service of the subpoena, and stated her office "would like to narrow and discuss

16  the documents that you are requesting in that subpoena."  (Dkt. No. 149-1 at 41.)  Ms. Nield

17  advised that there were no CDC 634 incident packages, but they would determine if any such

18  non-confidential documents existed related to request #1, redact third party names, and produce

19  them.  (Id.)  She also stated that "[t]he production of any of the documents requested would be

20  subject to a Protective Order which [her] office will prepare."  (Id.)  Ms. Nield noted that the

21  court's protective order related only to inmate Robinson's documents.  (Id.)

22         On October 6, 2011, plaintiff's counsel emailed Ms. Nield, informing her that the

23  court approved the subpoena, which mirrored the order, that he was willing to discuss a

24  protective order, and noting that the CDCR had not timely objected to the subpoena, but

25  produced only a "very limited set of documents."  (Dkt. No. 149-1 at 43.)  Plaintiff's counsel

26  wrote:

We then tried to ascertain whether the CDC had produced all responsive documents.  We could not receive a straight answer from CDC's counsel for several weeks.  CDC's counsel first claimed he had no obligation to search for certain documents, then claimed Scruggs' file was not in the CDC's control, then claimed that the CDC did produce responsive documents, and finally referred us to Defendants' counsel for reasons that we do not understand.  Only now, after you became involved, have we learned that not all responsive documents have been produced.  Defendants' depositions are scheduled for Wednesday-Friday of next week.  We have spent significant time preparing for those depositions.  It now sounds like we will not receive the CDC's production before the depositions take place.

(Dkt. No. 149-1 at 43.)  Plaintiff's counsel stated that in light of the impending depositions, he could not allow the late request for a protective order to slow down the production process, would have to file a motion to compel, and had already initiated the meet-and-confer process with Mr. Hurtado.  (Id.)

Plaintiff's counsel declares that on October 7, 2011, he spoke with Ms. Nield who "indicated that the production had been completed in September and that [she] was unaware of any deficiencies in the production."  (Dkt. No. 149-1 at 6.)  Plaintiff's counsel informed her that he previously notified Mr. Hurtado of the deficiencies.  (Id.)  That same day, at 3:28 p.m., plaintiff's counsel emailed Ms. Nield a copy of the October 4 email to Mr. Hurtado, and noted a new omission in the production had come to light:  no documents or reports generated from CDCR electronic files were produced.  (Dkt. No. 149-1 at 46.)  Plaintiff's counsel asked Ms. Nield to notify him by October 8 whether the production defects could be remedied prior to the depositions.  (Id.)

In response, on October 7 at 3:33 p.m., Ms. Nield emailed that she was not in possession of the central files, but that CDCR case records headquarters had them.  (Dkt. No. 149-1 at 51.)  She stated she would "review [his] email and attachments and see if any other documents exist that are not confidential and are responsive to the subpoena."  (Id.)  Later that day, at 3:43 p.m., Ms. Nield responded to plaintiff's request for digital photos, stating:  "I do not believe they have capabilities to do that.  Photocopies will be produced."  (Dkt. No. 149-1 at 57.)

1        Earlier on October 7, 2011, at 1:37 p.m., defendants' counsel Angus emailed

2   plaintiff's counsel, indicating she had become aware that there was "some question" as to

3   whether CDCR had satisfied the subpoena:

4           Given this, I would like to know what your position is.  I am not
            willing to produce Defendants for their depositions next week if
5           you believe that CDCR has not produced all documents [in] its
            possession, custody, or control that it was obligated to produce
6           under the court order and subpoenas if there is any potential that
            you will require Defendants' depositions to be continued until after
7           a date that CDCR has complied with the subpoenas (or the Court
            issues an order on any dispute concerning compliance).  In other
8           words, I have significant concerns that you will require Defendants
            to appear for their depositions on two separate occasions.  Please
9           advise me [of] your position.

10  (Dkt. No. 149-1 at 60.)  At 4:47 p.m., plaintiff's counsel responded to defendants' counsel Angus

11  by email, stating the depositions were already postponed or rescheduled based on her scheduling

12  issues, and that in view of the court's scheduling order, plaintiff was in no position to postpone

13  them further.  (Dkt. No. 149-1 at 62.)  Plaintiff's counsel refused to agree to defendants'

14  preconditions concerning whether the depositions could not be continued if the CDCR produced

15  documents after the depositions, and stated he expected defendants to appear for depositions as

16  noticed.  (Id.)

17       On October 10, 2011, defendants' counsel Angus emailed plaintiff's counsel:

18          I appreciate your position, but you have not yet informed me of
            what your position is with respect to CDCR's compliance with the
19          subpoenas.  Moreover, there are still two weeks left in which to
            take the Defendants' depositions if it is your position that CDCR
20          has not yet fully complied.  To be clear, Defendants' depositions
            will not be continued on the basis that additional documents are
21          needed from CDCR; we will proceed with the depositions as noted,
            but they will need to be concluded on those days.
22

23  (Dkt. No. 149-1 at 62.)

24       On October 10, 2011, Ms. Nield sent plaintiff's counsel "91 photographs arranged

25  12 per letter sized page and scanned at low resolution."  (Dkt. No. 149-1 at 7.)  Submitted with

26  the photographs was a declaration by Paula Sholberg, Special Assistant to the Chief, Correctional

1  Case Records Services for the CDCR, attesting to her preparation and production of documents

2  to plaintiff's counsel on September 14, 2011, and providing corrected and legible copies of

3  documents previously produced.  (Dkt. No. 149-1 at 66.)  Ms. Sholberg declared that there were

4  no additional documents responsive to items 5 and 6 of the subpoena relating to cell or housing

5  status.  (Id.)  On October 11, 2011, Ms. Nield sent plaintiff's counsel:

6         (1) electronically generated reports showing the bed numbers
        occupied by [plaintiff and inmate Robinson], which did not contain
7         any cellmate name information for either inmate; and (2) clean
        copies of two pages of the poorly-reproduced documents (out of a
8         total of thirty-one pages).

9  (Dkt. No. 149-1 at 7.)

10         Defendants were deposed on October 12 and 13, 2011.  (Dkt. No. 149-1 at 7.)

11  Defendant Nelson testified that he reviewed "a lot of documents" in preparation for the

12  deposition, estimating about "150 pages," including "classification chronos, 837 Incident

13  Reports, which would include the medical clearances."  (Dkt. No. 149-1 at 85.)  While discussing

14  the factors that come into play in making cell assignments, defendant Nelson testified that he

15  could access inmate central files, and on occasion did, but could not recall whether he accessed

16  central files in connection with bed moves unless it was needed by the lieutenant.  (Dkt. No. 149-

17  1 at 91.)  Defendant Nelson testified that no one asked him to collect and retain documents

18  pertaining to this lawsuit.  (Dkt. No. 149-1 at 100.)

19         On October 25, 2011, at 2:56 p.m., plaintiff's counsel emailed Ms. Nield,

20  attaching copies of the documents that were defectively copied, requested their re-production,

21  and providing a list of representative potential documents responsive to the subpoena that had not

22  yet been produced.  (Dkt. No. 149-1 at 118.)  On October 26, 2011, at 3:53 p.m., Ms. Nield

23  responded, acknowledging receipt of the documents improperly copied, but noting that the

24  redactions included would remain, and stating that further redactions were in order as the last

25  names of third parties were not redacted as they should have been.  (Dkt. No. 149-1 at 120.)  Ms.

26  Nield confirmed that she asked for cleaner and darker copies of most of them.  (Id.)  She added:

> Concerning the cell information, rosters etc. your requests are vague and ambiguous and outside the scope of your subpoena. However, since we were not involved in the initial production, we will re-visit your requests and see if any additional housing, or cell information exists that is not confidential.  We will need some time to gather any additional information.
>
> In the interim, I do need the protective order that we forwarded to you a few weeks back signed and returned.

(Dkt. No. 149-1 at 120.)  On October 28, 2011, at 2:23 p.m., Ms. Nield emailed plaintiff's counsel and provided the declaration of C. Pesci and the production from the Distributed Data Processing System ("DDPS") Unit of the inmate housing bed/cell history for inmate Robinson, redacting the name of the third party inmate.  (Dkt. No. 149-1 at 123.)  She stated no additional documents exist at DDPS relating to the housing of Scruggs or Robinson.  (Id.)  Ms. Nield noted her understanding that plaintiff's counsel had the same document for plaintiff.  (Id.)  Ms. Nield noted they were attempting to determine if there were any CDC-154 or other classification documents relating to housing for both plaintiff and inmate Robinson.  (Id.)  Finally, Ms. Nield stated they had requested cleaner copies of the allegedly defective copies previously provided, but there would be some delay as the central files were being transferred back to the institutions. (Id.)

On November 1, 2011, plaintiff's counsel responded to Ms. Nield, inquiring "what is DDPS?" and

> Are you stating that no additional documents -- "confidential" or "nonconfidential" -- relating to the housing of Scruggs or Robinson, their dangerousness, their enemies, violence, gang or disruptive group affiliation or disassociation or debriefing, incidents involving any of the foregoing exist within CDCR?  Or is DDPS some sub-unit of CDCR?

(Dkt. No. 149-1 at 125.)

On November 4, 2011, Ms. Nield emailed plaintiff's counsel and "confirmed that the central files for [plaintiff] and inmate Lorenzo Robinson are at CSP-LAC in Lancaster." (Dkt. No. 149-4 at 9.)  She confirmed that plaintiff's counsel indicated he had plaintiff's de-

11

briefing report, which Ms. Nield contends is a confidential document.  (Id.)  Ms. Nield stated

they were reviewing the central files to determine if confidential documents exist and, if so,

would request that the confidential documents be forwarded to Ms. Nield who would then

"entertain a conference with the Court to determine if the Court will conduct an in camera

review" to avoid the expense and delay of a motion to quash.  (Id.)[2]  Ms. Nield continued:

> On behalf of the CDCR, we can not produce confidential
> documents without a court order and the court's determination if
> the documents are relevant and outweighs the significant safety and
> security issues that release of such information can cause.  Without
> an in camera review, the court is unable to make that
> determination.  Without an Order from the Court and notice to
> third parties, the CDCR can not release any confidential
> information.

(Dkt. No. 149-4 at 9.)  Ms. Nield reiterated that the CDC 154 no longer exists for 2003-04

because their retention period is one year, and they were reviewing inmate Robinson's files to see

if there were any classification committee meeting documents.  (Id.)  Ms. Nield stated she would

produce any nonconfidential documents, if any exist, within the next week, and that if

confidential documents exist, would "then determine if the Court will entertain a court

conference call related to same and possible in camera review."  (Id.)

On November 10, 2011, at 6:45 p.m., plaintiff's counsel emailed Ms. Nield, and

informed her that the dispute concerning production of documents pursuant to the subpoena

continued, and that plaintiff was filing a motion to compel and for sanctions.  (Dkt. No. 149-4 at

12.)  On November 14, 2011, at 10:51 a.m., Ms. Nield responded by email, expressing surprise

over the filing of a motion in light of their diligence in getting the documents to plaintiff.  (Id.)

Ms. Nield confirmed that she received the documents on November 10, and was planning to

////

---

[2]  It is unclear to the undersigned how or when Ms. Nield believed this "conference with the court" was to occur because CDCR never noticed any motion to quash or for a protective order.

1    discuss them with plaintiff's counsel on November 14, 2011.  (Id.)  Ms. Nield also stated she

2    had the nonconfidential documents re-copied and produced to plaintiff's counsel.  (Id.)

3           On November 14, 2011, at 8:04 p.m., plaintiff's counsel emailed Ms. Nield,

4    reminding her the subpoena was served in August of 2011, and that plaintiff's counsel had spent

5    many hours meeting and conferring with CDCR counsel in an effort to obtain compliance with

6    the subpoena. (Dkt. No. 149-4 at 15.)  Plaintiff's counsel promised to treat confidentially

7    documents produced, and to stipulate to a separate protective order.  In light of CDCR's refusal

8    to release certain unidentified documents deemed "confidential," plaintiff's counsel stated he had

9    no choice but to file a motion to compel.  (Id.)

10          On November 15, 2011, at 5:48 p.m., Ms. Nield emailed plaintiff's counsel,

11   reiterating the history of their efforts to comply with the subpoena, and contending that their

12   continuing efforts do not demonstrate a course of action designed to prevent plaintiff from

13   gaining access to responsive documents, or show that CDCR was acting in bad faith.  (Dkt. No.

14   149-4 at 14.)  Ms. Nield stated her office was preparing to overnight the non-confidential

15   documents from the central files of plaintiff and inmate Robinson, with third party names

16   redacted, but would not produce any confidential document without a court order.  (Id.)

17          On November 16, 2011, Ms. Nield sent, via overnight mail, non-confidential

18   documents for inmates Scruggs and Robinson, along with a proposed protective order.  (Dkt. No.

19   149-4 at 18.)  She recommended counsel contact the court to request an in camera review of the

20   confidential documents.  (Id.)[3]

21          On November 18, 2011, Ms. Nield emailed plaintiff's counsel, with a copy

22   directed to DAG Grant Lien, asking plaintiff's counsel to advise if he was taking the motion to

23   compel off calendar, but if not, seeking a week or two continuance of the motion to compel to

24

25          [3]  The undersigned cannot fathom how plaintiff's counsel was expected to contact the
     court requesting an in-camera review of an unknown number of documents apparently being
26   withheld on an unknown confidential basis.

1   allow CDCR sufficient time to prepare the joint stipulation.  (Dkt. No. 149-4 at 21.)  On

2   November 21, 2011, Ms. Nield informed plaintiff's counsel she would seek an ex parte

3   continuance in light of plaintiff's counsel's failure to respond to the November 18 email.  (Dkt.

4   No. 149-4 at 23.)  Ms. Nield also informed plaintiff's counsel that

> any CDC 154 or EOP rosters, if any did exist, are purged within
> one year and three year[s,] respectively.  All documents responsive
> have been produced.  We have relayed our position on any
> documents deemed confidential in prior communications with you.

7   (Id.)

8          In a November 21, 2011, letter to plaintiff's counsel, Deputy Attorney General

9   Grant Lien set forth plaintiff's counsel's questions, and Lien's responses, as follows, in pertinent

10  part:

> 4) Whether at the time Defendants were preparing for their
> depositions [] and at a time Defendants were aware of our
> complaints about CDCR's non-compliance they were in possession
> of documents obtained from the CDCR, as the CDCR told us.
>
>    CDCR granted permission for Defendants to review the central
> files of Robinson and Scruggs at CDCR headquarters to refresh
> their recollections before their depositions.  Only Defendant Vance
> reviewed a central file (Robinson's).  The other documents that
> Defendants reviewed were provided by our office.  Again, this
> question is of no consequence because the subpoena was directed
> to CDCR.

18  (Dkt. No. 149-3 at 5.)[4]

> 5) If the answer to #4 is yes, how Defendants can claim that such
> documents were not in their custody and control when Defendants
> physically had possession of the documents.
>
> Defendants did not have possession, custody, or control of the
> central files.  "Control is defined as the legal right to obtain
> documents upon demand."  *United States v. International Union of*

---

4   In the joint stipulation, counsel for CDCR states that "[d]efense counsel from the AG's office did review the C-files of the individuals at issue, and apparently copied documentation they felt was pertinent to the defense of their clients."  (Dkt. No. 149 at 26.)  However, no dates and no identities of "the AG's office" were provided.  (Id.)  The record reflects at least three different Deputy Attorneys General have worked on this case:  Michelle Angus, Grant Lien, and James Flynn, who defended the defendants' depositions.

1    *Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989.)
     A part is not in "control" of records obtainable only with the
2    permission of another. *Clark v. Vega Wholesale Inc.*, 181 FRD
     470, 472 (D. Nev. 1998). Plaintiff would have the burden of
3    showing that Defendants had such control. *Steele Software
     Systems Corp. v. Dat Quick Info. Systems, Inc.*, 237 FRD 561, 564
4    (D Md. 2006); *Norman v. Young*, 422 F.2d 470, 472-73 (10th Cir.
     1970). In any event, this question is of no consequence because
5    Plaintiff directed the subpoena to CDCR.

6    (Dkt. No. 149-3 at 5.)

7         6) If the answer to #4 is yes, how Defendants could simultaneously
          possess such documents, which they knew had not been produced
8         to Plaintiff because of our complaints about that issue, and still
          profess ignorance of the CDCR's non-compliance and in fact
9         threaten to cancel Defendants' depositions because of its
          ignorance.
10
          I do not know what you are asking with this question. Our office
11        never forced you to take Defendants' depositions without all
          responsive documents. Our office was simply unwilling to allow
12        you to use CDCR's alleged non-compliance to depose our clients
          twice. Our office even offered to continue the depositions until
13        after the discovery dispute was resolved but you refused. Had you
          made this proposal or sought a continuance of the trial, our office
14        would have been amenable to it. Again, this question is of no
          consequence because your client directed the subpoena to CDCR.
15

16   (Dkt. No. 149-3 at 5.)

17        CDCR counsel Jason Hurtado declares that:

18        at no time did [he] discuss the document subpoena propounded by
          [plaintiff's counsel] with anybody at the AG's office, including
19        Deputy Attorney General Michelle Angus, or any other attorney
          representing the CDCR employee defendants. There was no effort,
20        collusion or conspiracy to withhold documentation from
          [plaintiff's counsel] either in conjunction with the Attorney
21        General's office, or as to the CDCR acting on its own behalf. The
          only communication [he] had with the Attorney General's office
22        with respect to the document production was in the form of
          correspondence [he] received from legal analyst Angie Brodbeck,
23        indicating that both of the files at issue were now located at case
          records at headquarters.
24

25   (Dkt. No. 149-5 at 4.)

26   ////

1    Deputy Attorneys General Michelle Angus and Grant Lien provided declarations

2  stating that "[n]either defendants nor I had any involvement with CDCR's document

3  production," (dkt. nos. 149-2 at 1; 149-3 at 1), and "[n]either defendants nor I have ever withheld

4  or destroyed any evidence."

5  IV.  Analysis

6       A.  Motion to Compel Compliance[5]

7    Discovery is permissible against nonparties.  Fed. R. Civ. P. 45.  A Rule 45

8  subpoena is the only discovery method by which information may be obtained from a nonparty.

9  Rule 45 subpoenas permit discovery from nonparties equivalent to discovery from parties under

10  Rule 34.  (See Adv. Comm. Note on 1991 Amendment to Fed. R. Civ. P. 45.)

11    A nonparty served with the subpoena duces tecum may make objections to the

12  subpoena duces tecum within 14 days after service or before the time for compliance, if less than

13  14 days.  Fed. R. Civ. P. 45(c)(2)(B).  "Only the [nonparty] can prevent disclosure by objection.

14  The party to whom the subpoenaed records pertain cannot simply object.  Rather, a protective

15  order or motion to quash the subpoena is required."  Schwarzer, Tashima & Wagstaffe,

16  California Practice Guide:  Federal Civil Procedure Before Trial, ¶ 11:422 (2002); see also

17  Pennwalt Corp. v. Durand-Wayland, Inc., 708 F.2d 492, 494 n.5 (9th Cir. 1983) ("Once the

18  person subpoenaed objects to the subpoena . . . the provisions of Rule 45(d) come into play.

19  Then the party seeking discovery must obtain a court order directing compliance.").

20    Generally, failure to serve timely objections waives all grounds for objection.  The

21  Second Circuit held:

22

23    [5] In various emails, nonparty CDCR claims the subpoena duces tecum was improperly
served.  However, where a party has actual notice, failure to make a timely objection waives

24  insufficiency of service.  See E. & J. Gallo Winery v. EnCana Energy Serv., Inc., 2005 WL
3710352, at *4 (E.D. Cal. Aug. 15, 2005).  Here, CDCR did not file a motion to quash the

25  subpoena, but notified plaintiff's counsel as to their objection as to the manner of service, yet
began to produce documents anyway.  Accordingly, the court finds that the CDCR waived its

26  objection to insufficiency of service.

> Rule 45(c)(2)(B)[ ] require[s] the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a "game."  We . . . believe that [Rule 45](d)(2) contains additional requirements for a claim of privilege not alternative ones.  While we are mindful that "the investment of time necessary to review all responsive documents for privileged material . . . does not lend itself to the limited fourteen (14) day time period . . .," a person responding to a subpoena should at least assert any privileges within the 14 days provided in Rule 45(c)(2)(B).  A full privilege log may follow "within a reasonable time," or if more time is needed an extension may be sought from the trial court.

In re DG Acquisition Corp., 151 F.3d 75, 81 (2d Cir. 1998) (citations omitted); see Millenium

Holding Group, Inc. v. Sutura, Inc., 2007 WL 121567, *3 (D. Nev. Jan. 11, 2007) ("if Millenium

wished to prevent disclosure, a motion for a protective order or to quash the subpoena would be

required.").  Thus, a nonparty's failure to timely make objections to a Rule 45 subpoena duces

tecum generally requires the court to find that any objection has been waived.  In re DG

Acquisition Corp., 151 F.3d at 81 (privilege against self-incrimination waived by delay);

Creative Gifts, Inc. v. UFO, 183 F.R.D. 568, 570 (D. N.M. 1998) ("By failing to object within

the time permitted by the Federal Rules, [the nonparty] has waived the right to object.  See Wang

v. Hsu, 919 F.2d 130 (10th Cir. 1990).").

However, in "unusual circumstances and for good cause," the failure to timely act

will not bar consideration of objections to a Rule 45 subpoena.  McCoy v. Southwest Airlines

Co., Inc., 211 F.R.D. 381, 385 (C.D. Cal. 2002).  "Courts have found unusual circumstances

where:  (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2)

the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and

counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the

time the witness challenged the legal basis for the subpoena."  Id.

Under Rule 26(c), the court may *sua sponte* issue a protective order for good

cause shown.  McCoy, 211 F.R.D. at 385 (citation omitted).

////

Here, the CDCR failed to timely and fully respond to the subpoena or provide plaintiff's counsel with timely written notice that some of the documents responsive to the subpoena were considered confidential.  Fed. R. Civ. P. 45(c)(2)(B).  The instant subpoena was served on August 26, 2011, and provided for responses on September 16, 2011.  Therefore, the written objections were due on or before September 9, 2011.  The record reflects that Mr. Hurtado did not file written objections as to the alleged confidential nature of certain documents being withheld.  Ms. Nield was retained after the 14 day deadline ran, but no such written objection was contained in her October 6, 2011 email to plaintiff's counsel.

The court does not find good cause to excuse CDCR's untimely objection because the subpoena was not overbroad or outside the bounds of fair discovery.  To the contrary, the subpoena sought relevant information.  Indeed, the court authorized discovery of the documents sought prior to service of the subpoena by the August 24, 2011 order, which narrowed the scope of the documents sought, and the order was provided to CDCR counsel on September 1, 2011.  Despite being aware that the court previously authorized the discovery of the documents sought, and that the court was concerned about keeping this 2006 case on track for trial, and that plaintiff's counsel needed the documents prior to the defendants' depositions,[6] nonparty CDCR chose to not file a timely written objection, either to the court or to plaintiff's counsel, and opted not to seek timely court intervention by filing a motion to quash, motion for protective order, or request for *in camera* review.  Rather, CDCR counsel simply encouraged plaintiff's counsel to seek a court conference for possible in camera review.  Nonparty CDCR counsel claims:

> The only reason [the *in camera* review] request has not yet been made to the Court to this point has been the ongoing efforts counsel for the CDCR has been undertaking to assure that the plaintiff has obtained all of the non-confidential documents he is seeking and that they are of the quality he is seeking.

---

[6]  The August 24, 2011 order provided to CDCR counsel on September 1, 2011, noted the subpoena was sought so that plaintiff could obtain the documents prior to the defendants' depositions, which were to be completed, as required by court order, before November 1, 2011. (Dkt. No. 140 at 1.)

1  (Dkt. No. 149 at 21.)  At the hearing, CDCR counsel stated he was going to file a motion

2  (apparently for an in camera review), but such motion was delayed as he was required to respond

3  to the instant motion.  However, plaintiff's motion to compel was not filed until November 11,

4  2011.  By November 11th, two and a half months had passed since the subpoena was served on

5  August 26, 2011.  Just because the CDCR chose to send the case out to contract counsel did not

6  mean the objection period for the subpoena started anew.

7         In light of this record, CDCR's position does not fall squarely into the second or

8  third McCoy exceptions.  First, the CDCR did not timely challenge the legal basis for the

9  subpoena, or seek court intervention as to the alleged confidential documents.  Rather, the CDCR

10  opted to produce certain nonconfidential documents, many in illegible form.  Second, after the

11  case was referred to outside counsel, Ms. Nield untimely raised the confidentiality issue in a

12  phone conversation, and failed to provide a privilege log of the alleged confidential documents

13  withheld, even though Ms. Nield claimed there were only "a few" such documents.  Third, the

14  CDCR gave plaintiff's counsel conflicting information as to the location of the central files and

15  as to the nature of the responses that would be provided.  Fourth, it does not appear the CDCR

16  made reasonable efforts to get responsive documents to plaintiff's counsel prior to the

17  defendants' depositions, even though the depositions were scheduled long after the September

18  16, 2011 responsive deadline set forth in the subpoena.  Fifth, the fact that the defendants

19  personally, as well as the deputy attorney general, had access to the central files of plaintiff and

20  inmate Robinson prior to the depositions, at the same time CDCR counsel was allegedly looking

21  for the central files, is disconcerting, at best.  The record demonstrates that someone at CDCR

22  sent the central files to case record headquarters.  (Dkt. No. 149-5 at 2.)  Thus, it appears that any

23  "unusual circumstances" of locating the central files was one of CDCR's own making.

24         For all of the above reasons, the court finds no good cause exists to excuse

25  nonparty CDCR's untimely objection or late production of documents.  Accordingly, plaintiff's

26  ////

motion to compel production of all documents responsive to the subpoena duces tecum is

partially granted, as follows:

        1.  Counsel for CDCR shall turn over to plaintiff's counsel, without redaction, all

documents withheld as confidential, that are responsive to the subpoena, no later than December

10, 2011.[7]  Those documents are subject to an attorney's eyes only protective order, and may be

used solely for the instant litigation.

        2.  Within seven days from December 8, 2011, nonparty CDCR shall produce the

photographs in digital format or in 8 x 10 color photographs (no more than 1 per page) to counsel

for plaintiff.

        3.  Counsel for CDCR and counsel for defendants are directed to communicate

and work together to ensure that

> (a) counsel for plaintiff has received all discovery in this action,
> including (i) all documents sought by subpoena, but, in addition,
> (ii) any documents defendants personally reviewed prior to their
> depositions, either in the central files of plaintiff or inmate
> Robinson, or held in the office of the Deputy Attorney General in
> preparing the defendants for their depositions that are relevant to
> the claims in this action; and

> (b) an exhaustive search for documents responsive to the subpoena
> has been completed, and that, to the extent CDCR contends certain
> responsive documents were destroyed, that a search took place to
> ensure the documents were actually destroyed and not simply
> stored, and that, in the event the documents were produced in
> duplicate or triplicate, other sources for those documents were
> exhausted as well.

        4.  Within fourteen days from December 8, 2011, nonparty CDCR shall file a

declaration, under oath and if true, that a diligent search has been made and that all confidential

---

[7]  As further evidence of CDCR's troubling, lackadaisical response to plaintiff's subpoena, CDCR's counsel was instructed to bring with him to the December 8, 2011 hearing all responsive documents that CDCR asserted were confidential.  At the hearing, CDCR's counsel responded that he had brought the documents with him.  However, when ordered to immediately produce those documents to plaintiff's counsel subject to the attorney's eyes only protective order, CDCR's counsel stated that the documents he brought also included non-responsive documents, so he was granted another day to produce the responsive documents.

and nonconfidential documents produced in response to the subpoena served on August 26, 2011, are all of the physical and electronic documents in its possession, custody or control, responsive to the subpoena.  The declaration shall specifically address what efforts were made to find documents, if any document retention policy affected CDCR's ability to produce documents, and whether any litigation hold was placed on any of the documents requested.  If documents requested were destroyed, the declaration shall set forth the specific document, when the document destruction occurred, and append a copy of the CDCR document retention policy governing the destruction.

5.  Within fourteen days from December 8, 2011, counsel for defendants shall file a declaration, under oath, confirming he has communicated with counsel for CDCR, and that all documents received through discovery, identified for use at trial, and sought by subpoena, have been provided to counsel for plaintiff.  The declaration shall specifically address what efforts were made to find documents, any document retention policy that affected CDCR's ability to produce documents, and whether any litigation hold was placed on any of the documents requested.  If documents requested were destroyed, the declaration shall set forth when the destruction occurred.

6.  Within fourteen days from December 8, 2011, each defendant personally shall file a declaration attesting that all responsive, non-privileged documents in his possession have been produced to plaintiff's counsel.

7.  Within twenty-eight days from December 8, 2011, counsel for plaintiff shall notify counsel for defendants regarding whether the depositions of any defendant needs to be continued, and, if so, identify the specific issue or issues.  To the extent the parties agree on the scope of any continued deposition, the expenses of such deposition shall be worked out between counsel for defendants and counsel for CDCR.  If defendants and the nonparty cannot agree, they shall seek court intervention.

////

1        B.  Request for Civil Contempt Sanctions against Nonparty CDCR

2            Plaintiff asks the court to sanction CDCR for its failure to adequately respond to

3   the subpoena, correctly noting this court has authority to hold the CDCR in contempt for failing,

4   without adequate excuse, to obey the subpoena.  Fed. R. Civ. P. 45(e).  But plaintiff seeks an

5   order imposing $4500.00 in monetary sanctions relying on two cases[8] that address sanctions for a

6   party's failure to comply with discovery.  The Ninth Circuit has found:

7            The only authority in the Federal Rules of Civil Procedure for the
             imposition of sanctions against a nonparty for failure to comply
8            with a subpoena duces tecum is Rule 45[e][9].  [footnote omitted]
             Fisher v. Marubeni Cotton Corp., 526 F.2d 1338, 1341 (8th Cir.
9            1975).

10  Pennwalt Corp., 708 F.2d at 494.[10]  Rule 37 of the Federal Rules of Civil Procedure is not

11  applicable.  Pennwalt Corp., 708 F.2d at 494.

12           A subpoena shall "command each person to whom it is directed to attend and give

13  testimony or to produce and permit inspection and copying of designated books, documents or

14  tangible things in the possession, custody or control of that person."  Fed. R. Civ. P. 45(a)(1)(iii).

15  The issuing court may hold a person in contempt for failing to obey a subpoena.  Fed. R. Civ. P.

16  45(e).  "Even though subpoenas are issued by attorneys, they are issued on behalf of the Court

---

17      [8]  Plaintiff cites Lee v. Max Int'l., LLC, 638 F.3d 1318, 1320 (10th Cir. 2011) (in breach
18  of contract action, defendants sought dismissal of the case as a sanction for plaintiffs'
    misconduct during discovery); and Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites,
19  456 U.S. 694, 707 (1982) (expressly applying Fed. R. Civ. P. 37(b)(2)(A) in discussing
    application of sanctions for violation of discovery by parties to the litigation).
20
21      [9]  The 1991 amendment to Federal Rule 45 redesignated the contempt provisions
    formerly embodied in Rule 45(f) as Rule 45(e).  Rule 45(e) provides that the failure by any
22  person without adequate excuse to obey a subpoena served upon that person may be deemed a
    contempt of the court from which the subpoena issued.

23      [10]  In Pennwalt Corp., the court implicitly accepted that attorney's fees could be assessed
24  against a nonparty.  Id., 708 F.2d at 494-95.  The nonparty in Pennwalt Corp. timely objected to
    the subpoena, and the Ninth Circuit ruled that the district court could not, under the court's
25  "inherent power," impose sanctions for abuse of the judicial process absent a showing the
    nonparty acted in bad faith.  Id., 708 F.2d at 494, citing Roadway Express, Inc. v. Piper, 447 U.S.
26  752, 766 (1980) ("If a court may tax counsel fees against a party who has litigated in bad faith, it
    certainly may assess those expenses against counsel who willfully abuse judicial processes.")

and should be treated as orders of the Court." Higginbotham v. KCS Int'l, Inc., 202 F.R.D. 444, 455 (D. Md. 2001) (citing Advisory Committee Notes to Rule 45(a) 1991 amend. ["Although the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act of defiance of a court order and exposes the defiant witness to contempt sanctions"] ); Halawani v. Wolfenbarger, 2008 WL 5188813, *7 (E.D. Mich. Dec. 10, 2008) (same).)[11]

The sanction of civil contempt is designed to force the contemnors to comply with an order of the court and thus to affect discovery. Cunningham v. Hamilton County, Ohio, 527 U.S. 198, 207 (1999). Courts have the inherent power to enforce their orders through civil contempt. See Spallone v. United States, 493 U.S. 265, 276 (1990) ("courts have inherent power to enforce compliance with their lawful orders through civil contempt," citing Shillitani v. United States, 384 U.S. 364, 370 (1966).) Civil contempt is characterized by the court's desire to compel obedience with a court order, or to compensate the contemnor's adversary for the injuries which result from the non-compliance. Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 778 (9th Cir. 1983). A district court has wide latitude in determining whether there has been a contemptuous defiance of one of its orders. Stone v. City and County of San Francisco, 968 F.2d 850, 856 (9th Cir. 1992). "Intent is irrelevant to a finding of civil contempt and, therefore, good faith is not a defense." Id., at 856, citations omitted. The failure of a responding party to file a responsive pleading to an order to show cause why a contempt citation should not issue may warrant a finding that the applicant's allegations are uncontested as a matter of law. See Rogers v. Webster, 776 F.2d 607, 611 (9th Cir. 1985).

////

----

[11] The court in Higginbotham addressed alleged improprieties by counsel during depositions of parties and nonparties, including disruption of the deposition of plaintiff's expert. Id., 202 F.R.D. at 459. By contrast, the court in Halawani addressed a nonparty's failure to produce any documents in response to, or to move to quash, the subpoena duces tecum. Id., 2008 WL 5188813 (E.D. Mich. 2008).

1   "In this circuit a civil contempt proceeding is 'a trial within the meaning of Fed.

2   R. Civ. P. 43(a) rather than a hearing on a motion within the meaning of Fed. R. Civ. P. 43(e)[;] .

3   . . the issues may not be tried on the basis of affidavits.'"  Pennwalt Corp., 708 F.2d at 495,

4   quoting Hoffman v. Beer Drivers & Salesman's Local Union No. 888, 536 F.2d 1268, 1277 (9th

5   Cir. 1976).  However, where the affidavits offered in support of a finding of contempt are

6   uncontroverted, a full evidentiary hearing is not essential to due process and the trial court may

7   treat the facts set forth in the uncontroverted affidavits as true.  See Peterson v. Highland Music,

8   140 F.3d 1313, 1324 (9th Cir. 1998) ("A trial court may in a contempt proceeding narrow the

9   issues by requiring that affidavits on file be controverted by counter-affidavits and may thereafter

10  treat as true the facts set forth in uncontroverted affidavits.").  Without an issue of material fact,

11  the district court is only required to give notice and an opportunity to be heard.  See United States

12  v. Ayres, 166 F.3d 991, 996 (9th Cir. 1999).[12]

13          Thus, plaintiff's motion for civil contempt sanctions for failure to timely and fully

14  comply with the subpoena duces tecum directed to a nonparty, as supported by this court's

15  August 24, 2011 order, is taken under submission.  Within 45 days from December 8, 2011, the

16  CDCR shall show cause why a contempt citation should not be issued against the CDCR,

17  including an order to reimburse plaintiff's counsel for their reasonable attorney's fees and costs

18  incurred in bringing the instant motion to compel.  As explained at the hearing, this may include

19

20          [12]  The Ninth Circuit stated:

21              While we do not encourage the imposition of contempt sanctions
            "on the papers," and while we reaffirm our admonition in *Peterson*
22          that "a district court ordinarily should not impose contempt
            sanctions solely on the basis of affidavits," 140 F.3d at 1324, we
23          conclude that because the issue of contempt was effectively
            uncontroverted, the procedures employed by the district court
24          afforded Ayres notice and an opportunity to be heard sufficient to
            satisfy due process. We therefore affirm the district court's finding
25          of civil contempt.

26  Ayres, 166 F.3d at 996.

1  the filing of various declarations from CDCR employees involved in responding to the subpoena.

2  Inasmuch as it is unclear whether there is an issue of material fact, the court will refrain from

3  setting the order to show cause for hearing pending receipt and review of CDCR's declaration or

4  declarations.

5              C.  Plaintiff's Motion for Sanctions Against Defendants

6              Plaintiff also seeks evidentiary sanctions against defendants.  The court is not

7  convinced that defendants' counsel is blameless in failing to have responsive documents timely

8  produced in this matter.  In the joint stipulation, plaintiff's counsel states that "[i]n response to

9  discovery, Defendants refused to produce these files, claiming that they do not have 'custody and

10  control' of these files, 'cannot produce them,' and instead that Plaintiff should direct such

11  discovery to the CDCR."  (Dkt. No. 149 at 3.)  In his declaration, plaintiff's counsel declares that

12  in response to a request for production of documents from plaintiff's central files, defendants

13  responded:

14                  Plaintiff should address his request to the Litigation Officer,
                    CSP-LAC, 44750 60th Street W, Lancaster, CA  93536, which is
15                  where these records are currently stored while Plaintiff is at
                    Atascadero State Hospital.

16

17  (Dkt. No. 149-1 at 2, 13.)[13]  In an August 26, 2011 email, counsel for defendants informed

18  plaintiff's counsel that defendants would produce only "the documents identified in Defendants'

19  previously-filed pretrial statement -- and that we are currently in possession of [--] are what will

20  be produced within the court-ordered deadline."  (Dkt. No. 149-1 at 27, emphasis in original.)

21  Once plaintiff's counsel filed the motion to compel compliance, defendants' counsel took the

22  position that defendants had no obligation to respond or assist plaintiff in obtaining the discovery

23

24         [13]  On August 10, 2011, Nathan Wilcox, in the Litigation Office of CDCR, informed
       plaintiff's counsel that because plaintiff is no longer incarcerated by CDCR, CDCR would not
25     voluntarily provide plaintiff with access to any of his files that were created in connection with
       plaintiff's incarceration, and that "the only way to access those files is through a Court-issued
26     subpoena."  (Dkt. No. 149-1 at 2.)  Plaintiff's counsel was similarly informed that a subpoena
       would be required to gain documents from inmate Robinson's central files.  (Id.)

1    responses.  Yet, it is curious that CDCR counsel informed plaintiff's counsel that any further

2    questions should be directed to Deputy Attorney General Michelle Angus.  (Dkt. No. 149-1 at

3    34.)

4           Moreover, on August 24, 2011, the court reminded defendants' counsel that

5    "plaintiff's counsel is entitled to all documents defendants have to support their case," and both

6    counsel were specifically "instructed to cooperate in the exchange of discovery so this stale case

7    may be resolved expeditiously."  (Dkt. No. 140 at 2.)  On August 5, 2011, the parties were

8    advised that the "court is not inclined to grant any further extensions for either party."  (Dkt. No.

9    134 at 4.)

10          Despite defendants' counsel's claim that the central files were not in defendants'

11   custody or control, the central files were moved to the case records headquarters at the request of

12   someone from the office of the Attorney General.  (Dkt. No. 149-5 at 2.)  Mr. Hurtado declares

13   that "the Attorney General's Office did not notify our office that these files had been transferred,

14   and therefore it took some time to track them down."  (Dkt. No. 149-5 at 2-3.)  CDCR counsel

15   states that "[d]efense counsel from the AG's office did review the C-files of the individuals at

16   issue, and apparently copied documentation they felt was pertinent to the defense of their

17   clients."  (Dkt. No. 149 at 26.)  But defendants' counsel's only response was that counsel

18   wouldn't produce the defendants for deposition if plaintiff anticipated requiring more deposition

19   testimony after receiving the documents, and suggested the depositions be delayed, contrary to

20   the court's express order that the depositions take place no later than November 1, 2011, or the

21   court's prior order reflecting its unwillingness to grant further extensions.

22          Defendants contend the court has no authority to seek sanctions from defendants

23   because the subpoena was not directed to them.  However, the court does have inherent authority

24   to sanction attorneys for abuse of the judicial process.  Roadway Express, Inc. v. Piper, 447 U.S.

25   752, 766 (1980) ("The power of a court over members of its bar is at least as great as its authority

26   over litigants.")

1    Therefore, plaintiff's request for evidentiary sanctions against defendants is also

2    taken under submission.  The court will address the request once the declarations required by this

3    order are filed.

4    D.  CDCR's Motion for Sanctions Against Plaintiff

5    Nonparty CDCR requests plaintiff be ordered to pay the CDCR $5,040.00 in

6    "monetary sanctions" for "the frivolous and unwarranted nature of the plaintiff's motion to

7    compel." (Dkt. No. 149 at 36.)  However, plaintiff's motion to compel is not frivolous, and, as

8    set forth above, was necessary due to the actions and inactions of the nonparty CDCR.

9    Accordingly, the court finds CDCR's motion for sanctions unwarranted, and the motion is

10   denied.

11   V.  Conclusion

12   Accordingly, IT IS HEREBY ORDERED that:

13   A.  Plaintiff's November 11, 2011 motion to compel (dkt. no. 144) is partially

14   granted.

15   1.  Counsel for CDCR shall turn over to plaintiff's counsel, without

16   redaction, all documents withheld as confidential, that are responsive to the subpoena, no later

17   than December 10, 2011.  Those documents are subject to an attorney's eyes only protective

18   order, and are to be used solely for the instant litigation.

19   2.  Within seven days from December 8, 2011, nonparty CDCR shall also

20   produce the photographs in digital form or in 8 x 10 color photographs (no more than one per

21   page) to counsel for plaintiff.

22   3.  Counsel for CDCR and counsel for defendants are directed to

23   communicate and work together to ensure that

24   (a) counsel for plaintiff has received all discovery in
     this action, including (i) all documents sought by
25   subpoena, but, in addition, (ii) any documents
     relevant to the claims or defenses in this litigation
26   defendants personally reviewed prior to their

27

1    depositions, either in the central files of plaintiff or
     inmate Robinson, or held in the office of the Deputy
2    Attorney General preparing the defendants for their
     depositions; and
3
     (b) an exhaustive search for documents responsive
4    to the subpoena has been completed, and that, to the
     extent CDCR contends certain responsive
5    documents were destroyed, that a search took place
     to ensure the documents were actually destroyed
6    and not simply stored, and that, in the event the
     documents were produced in duplicate or triplicate,
7    other sources for those documents were exhausted
     as well.
8

9           4.  Within fourteen days from December 8, 2011, nonparty CDCR shall

10   file a declaration, under oath and if true, that a diligent search has been made and that all

11   confidential and nonconfidential documents produced in response to the subpoena served on

12   August 26, 2011, are all of the physical and electronic documents in its possession, custody or

13   control, responsive to the subpoena.  The declaration shall specifically address what efforts were

14   made to find documents, any document retention policy that affected CDCR's ability to produce

15   documents, and whether any litigation hold was placed on any of the documents requested.  If

16   documents requested were destroyed, the declaration shall set forth when the destruction

17   occurred.

18          5.  Within fourteen days from December 8, 2011, counsel for defendants

19   shall file a declaration, under oath, confirming he has communicated with counsel for CDCR,

20   and that all documents received through discovery, identified for use at trial, and sought by

21   subpoena, have been provided to counsel for plaintiff.  The declaration shall specifically address

22   what efforts were made to find documents, any document retention policy that affected CDCR's

23   ability to produce documents, and whether any litigation hold was placed on any of the

24   documents requested.  If documents requested were destroyed, the declaration shall set forth

25   when the destruction occurred.

26   ////

1         6.  Within fourteen days from December 8, 2011, each defendant

2 personally shall file a declaration attesting that all relevant, non-privileged documents in his

3 possession have been produced to plaintiff's counsel.

4         7.  Within twenty-eight days from December 8, 2011, counsel for plaintiff

5 shall notify counsel for defendants regarding whether the depositions of any defendant needs to

6 be continued, and, if so, identify the specific issue or issues.  To the extent the parties agree on

7 the scope of any continued deposition, the expenses of such deposition shall be worked out

8 between counsel for defendants and counsel for CDCR.

9       B.  Within forty-five days from December 8, 2011, the CDCR shall show cause

10 why a contempt citation should not be issued against the CDCR, including an order to reimburse

11 plaintiff's counsel for their reasonable attorney's fees and costs incurred in bringing the instant

12 motion to compel.

13       C.  Plaintiff's request for evidentiary sanctions against defendants is taken under

14 submission.

15       D.  Nonparty CDCR's request for monetary sanctions is denied.

16       E.  The Clerk of the Court is directed to serve a copy of this order on counsel for

17 nonparty CDCR, The Nield Law Group, at gnield@nieldlaw.com.

18 DATED:  December 19, 2011

21                                   _____

22                           KENDALL J. NEWMAN

                            UNITED STATES MAGISTRATE JUDGE

23 /scru0633.mtc